# Exhibit A

 **CT Corporation**

**Service of Process Transmittal**
01/07/2022
CT Log Number 540849157

TO: Kim Ellis
LIBERTY MILITARY HOUSING
2100 INDEPENDENCE BLVD
VIRGINIA BEACH, VA 23455-2777

RE: **Process Served in California**

FOR: LPC Pendleton Quantico PM LP  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | MANDE TIPTON, an individual; CALEB C. TIPTON, a minor, by and through their guardian ad litem MICHAEL TIPTON; LONDYN J. TIPTON, a minor, by and through their guardian ad litem MICHAEL TIPTON; vs. CAMP PENDLETON & QUANTICO HOUSING, LLC |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 37202100053251CUPOCTL |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, GLENDALE, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/07/2022 at 02:13 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air |
| | Image SOP |
| | Email Notification,  Justin Clancy  jclancy@livelmh.com |
| | Email Notification,  Kim Ellis  kellis@livelmh.com |
| | Email Notification,  Jennifer Simmons  jennsimmons@livelmh.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>877-467-3525<br>SmallBusinessTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Page 1 of  1 / EM



# PROCESS SERVER DELIVERY DETAILS

**Date:**                    Fri, Jan 7, 2022

**Server Name:**             KRISTINA KESHISHIAN

| Entity Served | LPC PENDLETON QUANTICO PM LP |
|---|---|
| Case Number | 37-2021-00053251-CU-PO-CTL |
| Jurisdiction | CA |



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** CAMP PENDLETON & QUANTICO HOUSING,
*(AVISO AL DEMANDADO):* LLC, a Delaware limited liability company; LPC
PENDLETON QUANTICO PM LP, a Delaware limited partnership; LINCOLN
MILITARY PROPERTY MANAGEMENT LP, a Delaware limited partnership; and
Additional Parties Attachment form is attached.
**YOU ARE BEING SUED BY PLAINTIFF:** MANDE TIPTON, an individual;
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* CALEB C. TIPTON, a minor,
by and through their guardian ad litem MICHAEL TIPTON; LONDYN J. TIPTON,
a minor, by and through their guardian ad litem MICHAEL TIPTON

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/15/2021** at 12:13:17 PM
Clerk of the Superior Court
By Regina Chanez, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of San Diego
~~1100 Union Street~~  330 W Broadway
San Diego, California 92101

**CASE NUMBER:**
*(Número del Caso):*  37-2021-00053251-CU-PO-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Lenden F. Webb
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
WEBB LAW GROUP, APC
10509 Vista Sorrento Pkwy, Suite 450, San Diego CA 92121          (559) 431-4888

| DATE: | 12/22/2021 | Clerk, by | *R. Chanez* | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | R. Chanez | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* LPC Pendleton Quantico Pm LP

under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

**SUM-200(A)**

| SHORT TITLE: Mande Tipton, et. al. v. Camp Pendleton & Quantico Housing, LLC, et. al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff  ☒ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant

DOES 1 THROUGH 50, inclusive;

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Westlaw Doc & Form Builder™

 **CT Corporation**

# Service of Process Transmittal
01/07/2022
CT Log Number 540849261

**TO:**   Kim Ellis
LIBERTY MILITARY HOUSING
2100 INDEPENDENCE BLVD
VIRGINIA BEACH, VA 23455-2777

**RE:**   **Process Served in California**

**FOR:**   Camp Pendleton & Quantico Housing, LLC  (Domestic State: DE)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | MANDE TIPTON, an individual; CALEB C. TIPTON, a minor, by and through their guardian ad litem MICHAEL TIPTON; LONDYN J. TIPTON, a minor, by and through their guardian ad litem MICHAEL TIPTON; vs. CAMP PENDLETON & QUANTICO HOUSING, LLC |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 37202100053251CUPOCTL |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, GLENDALE, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/07/2022 at 02:13 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air |
| | Image SOP |
| | Email Notification,  Justin Clancy  jclancy@livelmh.com |
| | Email Notification,  Kim Ellis  kellis@livelmh.com |
| | Email Notification,  Jennifer Simmons  jennsimmons@livelmh.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>**877-467-3525**<br>SmallBusinessTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Page 1 of  1 / NR



# PROCESS SERVER DELIVERY DETAILS

**Date:**                    Fri, Jan 7, 2022

**Server Name:**             KRISTINA KESHISHIAN

| Entity Served | CAMP PENDLETON & QUANTICO HOUSING, LLC |
|---|---|
| Case Number | 37-2021-00053251-cu-po-ctl |
| Jurisdiction | CA |



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** CAMP PENDLETON & QUANTICO HOUSING,
*(AVISO AL DEMANDADO):* LLC, a Delaware limited liability company; LPC
PENDLETON QUANTICO PM LP, a Delaware limited partnership; LINCOLN
MILITARY PROPERTY MANAGEMENT LP, a Delaware limited partnership; and
Additional Parties Attachment form is attached.
**YOU ARE BEING SUED BY PLAINTIFF:** MANDE TIPTON, an individual;
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* CALEB C. TIPTON, a minor,
by and through their guardian ad litem MICHAEL TIPTON; LONDYN J. TIPTON,
a minor, by and through their guardian ad litem MICHAEL TIPTON

<table>
<tr><td>FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)</td></tr>
<tr><td><b>ELECTRONICALLY FILED</b><br>Superior Court of California,<br>County of San Diego<br><b>12/15/2021</b> at 12:13:17 PM<br>Clerk of the Superior Court<br>By Regina Chanez,Deputy Clerk</td></tr>
</table>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

<table>
<tr>
<td>The name and address of the court is:<br>(El nombre y dirección de la corte es):<br>Superior Court of California, County of San Diego<br><s>1100 Union Street</s> 330 W Broadway<br>San Diego, California 92101</td>
<td>CASE NUMBER:<br>(Número del Caso): 37-2021-00053251-CU-PO-CTL</td>
</tr>
</table>

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Lenden F. Webb
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
WEBB LAW GROUP, APC
10509 Vista Sorrento Pkwy, Suite 450, San Diego CA 92121            (559) 431-4888

DATE: 12/22/2021     Clerk, by *R Chanez* , Deputy
*(Fecha)*            *(Secretario)* R. Chanez     *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Camp Pendleton & Quantico Military Housing LLC

under: ☑ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

<table>
<tr>
<td>Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009]</td>
<td><b>SUMMONS</b></td>
<td>Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>Westlaw Doc & Form Builder</td>
</tr>
</table>

**SUM-200(A)**

| SHORT TITLE: Mande Tipton, et. al. v. Camp Pendleton & Quantico Housing, LLC, et. al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

DOES 1 THROUGH 50, inclusive;

Page __1__ of __1__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Westlaw Doc & Form Builder

 **CT Corporation**

**Service of Process Transmittal**
01/07/2022
CT Log Number 540849140

TO:     Kim Ellis
        LIBERTY MILITARY HOUSING
        2100 INDEPENDENCE BLVD
        VIRGINIA BEACH, VA 23455-2777

RE:     **Process Served in California**

FOR:    Lincoln Military Property Management LP  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | MANDE TIPTON, an individual; CALEB C. TIPTON, a minor, by and through their guardian ad litem MICHAEL TIPTON; LONDYN J. TIPTON, a minor, by and through their guardian ad litem MICHAEL TIPTON; vs. CAMP PENDLETON & QUANTICO HOUSING, LLC, |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 37202100053251CUPOCTL |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, GLENDALE, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/07/2022 at 02:13 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air |
| | Image SOP |
| | Email Notification,  Justin Clancy  jclancy@livelmh.com |
| | Email Notification,  Kim Ellis  kellis@livelmh.com |
| | Email Notification,  Jennifer Simmons  jennsimmons@livelmh.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203 |
| | **877-467-3525**<br>SmallBusinessTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Page 1 of  1 / EM



# PROCESS SERVER DELIVERY DETAILS

**Date:**                    Fri, Jan 7, 2022

**Server Name:**             KRISTINA KESHISHIAN

| Entity Served | LINCOLN MILITARY PROPERTY MANAGEMENT LP |
|---|---|
| Case Number | 37-2021-00053251-CU-PO-CTL |
| Jurisdiction | CA |



**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** CAMP PENDLETON & QUANTICO HOUSING,
**(AVISO AL DEMANDADO):** LLC, a Delaware limited liability company; LPC
PENDLETON QUANTICO PM LP, a Delaware limited partnership; LINCOLN
MILITARY PROPERTY MANAGEMENT LP, a Delaware limited partnership; and
Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:** MANDE TIPTON, an individual;
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** CALEB C. TIPTON, a minor,
by and through their guardian ad litem MICHAEL TIPTON; LONDYN J. TIPTON,
a minor, by and through their guardian ad litem MICHAEL TIPTON

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**12/15/2021** at 12:13:17 PM
Clerk of the Superior Court
By Regina Chanez, Deputy Clerk

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of San Diego<br>~~1100 Union Street~~ 330 W Broadway<br>San Diego, California 92101 | CASE NUMBER:<br>*(Número del Caso):* 37-2021-00053251-CU-PO-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Lenden F. Webb
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
WEBB LAW GROUP, APC
10509 Vista Sorrento Pkwy, Suite 450, San Diego CA 92121                    (559) 431-4888

DATE: 12/22/2021          Clerk, by  *R. Chanez*  R. Chanez, Deputy
*(Fecha)*          *(Secretario)*          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Lincoln Military Property LP management

   under:  ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
           ☑ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>Westlaw Doc & Form Builder™ |

SUM-200(A)

| SHORT TITLE: Mande Tipton, et. al. v. Camp Pendleton & Quantico Housing, LLC, et. al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

DOES 1 THROUGH 50, inclusive;

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Westlaw Doc & Form Builder™

CIV-010

| | |
|---|---|
| ATTORNEY *(Name, State Bar number, and address):*<br>Christian B. Clark          SBN: 330380<br>WEBB LAW GROUP APC<br>466 W. Fallbrook Ave, Suite 102<br>FRESNO, CA 93711<br>TELEPHONE NO.: 559-431-4888     FAX NO. *(Optional):* 559-821-4500<br>E-MAIL ADDRESS *(Optional):* office@webblawgroup.com<br>ATTORNEY FOR *(Name):* Mande Tipton, et. al. | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**12/15/2021** at 12:13:17 PM<br><br>Clerk of the Superior Court<br>By Regina Chanez, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
- ☐ CENTRAL DIVISION, SMALL CLAIMS, 330 W. BROADWAY, ROOM 241, SAN DIEGO, CA 92101-3827
- ☒ CENTRAL DIVISION, CIVIL, 330 W. BROADWAY, ROOM 225, SAN DIEGO, CA 92101
- ☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081

PLAINTIFF/PETITIONER: Mande Tipton, et. al.

DEFENDANT/RESPONDENT: Camp Pendleton & Quantico Housing, LLC, et. al.

| | |
|---|---|
| **APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL**<br>☐ **EX PARTE** | CASE NUMBER:<br>37-2021-00053251-CU-PO-CTL |

*NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant *(name):* Michael Tipton          is
   a. ☒ the parent of *(name):* Londyn J. Tipton
   b. ☐ the guardian of *(name):*
   c. ☐ the conservator of *(name):*
   d. ☐ a party to the suit.
   e. ☐ the minor to be represented *(if the minor is 14 years of age or older).*
   f. ☐ another interested person *(specify capacity):*

2. This application seeks the appointment of the following person as guardian ad litem *(state name, address, and telephone number):*
   Michael Tipton          ph: Care of: (619) 399-7700
   138 Rupertus Drive, San Clemente CA 92672

3. The guardian ad litem is to represent the interests of the following person *(state name, address, and telephone number):*
   Londyn J. Tipton          ph: Care of: (619) 399-7700
   138 Rupertus Drive, San Clemente CA 92672

4. The person to be represented is:
   a. ☒ a minor *(date of birth):* 10/14/2005
   b. ☐ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☒ the person named in item 3 has a cause or causes of action on which suit should be brought *(describe):*
   Caleb C. Tipton lived at the subject rental property in San Diego, which was rendered substandard and uninhabitable by Defendants' negligence and wrongful conduct. This allowed the property to suffer chronic water and moisture intrusion, and high humidity levels, resulting in damp rooms and microbial contamination/mold causing personal injury and damages to Caleb C. Tipton as described in the Complaint.

   ✔ Continued on Attachment 5a.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 JCC [Rev. January 1, 2008] | **APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL** | Code of Civil Procedure,<br>§ 372 et seq.<br>Westlaw Doc & Form Builder® |

CIV-010

| | |
|---|---|
| PLAINTIFF/PETITIONER: Mande Tipton, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Camp Pendleton & Quantico Housing, LLC, et. al. | |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

   c. ☒ the person named in item 3 has no guardian or conservator of his or her estate.

   d. ☒ the appointment of a guardian ad litem is necessary for the following reasons (specify):
   Plaintiff Londyn J. Tipton is a minor child and the appointment of a guardian ad litem is necessary to represent her interests in this action where she is named litigant alleging multiple causes of action against multiple Defendants.

   ☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
   a. ☒ related (state relationship): Father
   b. ☐ not related (specify capacity):

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. (If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):

   ☐ Continued on Attachment 7.

Christian B. Clark
_____
(TYPE OR PRINT NAME)                     ►                     _____
                                                                (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 12/15/21

Michael Tipton
_____
(TYPE OR PRINT NAME)                     ►     Michael Tipton
                                                                _____
                                                                (SIGNATURE OF APPLICANT)

### CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.
Date: 12/15/21

Michael Tipton
_____
(TYPE OR PRINT NAME)                     ►     Michael Tipton
                                                                _____
                                                                (SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

### ORDER   ☐ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that (name): Michael Tipton     Londyn J Tipton
is hereby appointed as the guardian ad litem for (name): ~~Caleb C. Tipton~~
for the reasons set forth in item 5 of the application.
Date: _____

                                                                _____
                                                                JUDICIAL OFFICER
                                                                ☑ SIGNATURE FOLLOWS LAST ATTACHMENT

CIV-010 JCC [Rev. January 1, 2008]

**APPLICATION AND ORDER FOR APPOINTMENT**
**OF GUARDIAN AD LITEM—CIVIL**

Page 2 of 2

| CASE TITLE | CASE NUMBER |
|---|---|
| Mande Tipton, et. al. v. Camp Pendleton & Quantico Housing, LLC, et. al. | |

**ATTACHMENT TO JC FORM #CIV-010 (APPLICATION FOR GUARDIAN AD LITEM – CIVIL)**

8.  I, *(name):* Michael Tipton_____, declare that I am the ☒ parent ☐ guardian ☐ conservator
    of *(name):* Londyn J. Tipton_____ and:
    a. I ☐ am ☒ am not asserting individual claims or defenses in these proceedings.
    b. The minor ☐ is ☒ is not the subject of a juvenile dependency proceeding.
    c. The minor ☐ is ☒ is not the subject of a probate guardianship.
    d. The minor ☐ is ☒ is not the subject of a custody order.  (If a custody order is in effect, the most recent order
       must be attached.)

9.  Notice of these proceedings has:
    a. ☒ been provided to all of the minor's parents.
    b. ☐ not been provided to all of the minor's parents because:
       i. ☐ I have sole legal custody of the minor identified in this application and have attached a copy of the
          current custody order.
       ii. ☐ the other parent is deceased.
       iii. ☐ other: _____
          _____
          _____
          _____

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 15, 2021_____

Michael Tipton_____                                  *Michael Tipton*
Type or print name                                                  Signature

---

**ORDER  ☐ EX PARTE**

The court finds that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of
the Application and Order for Appointment of Guardian ad Litem – Civil (JC Form #CIV-010), as requested.

The court orders that *(name):* Michael Tipton_____ is hereby appointed as the guardian ad litem for
*(name):* Londyn J Tipton_____ for the reasons set forth in item 5 of the Application and Order for
Appointment of Guardian ad Litem – Civil (JC Form #CIV-010).

Date: _12/21/2021_____                                  *Carolyn M. Caietti*
                                                            Carolyn M. Caietti
                                                            Judge of the Superior Court

---

SDSC CIV-383 (New 1/17)                    **ATTACHMENT TO JC FORM #CIV-010**
Mandatory Form                          **(APPLICATION FOR GUARDIAN AD LITEM – CIVIL)**

CIV-010

| ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Christian B. Clark          SBN: 330380<br>WEBB LAW GROUP APC<br>466 W. Fallbrook Ave, Suite 102<br>FRESNO, CA 93711<br>TELEPHONE NO.: 559-431-4888   FAX NO. *(Optional):* 559-821-4500<br>E-MAIL ADDRESS *(Optional):* office@webblawgroup.com<br>ATTORNEY FOR *(Name):* Mande Tipton, et. al. | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**12/15/2021** at 12:13:17 PM<br>Clerk of the Superior Court<br>By Regina Chanez, Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
☐ CENTRAL DIVISION, SMALL CLAIMS, 330 W. BROADWAY, ROOM 241, SAN DIEGO, CA 92101-3827
☒ CENTRAL DIVISION, CIVIL, 330 W. BROADWAY, ROOM 225, SAN DIEGO, CA 92101
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081

PLAINTIFF/PETITIONER: Mande Tipton, et. al.

DEFENDANT/RESPONDENT: Camp Pendleton & Quantico Housing, LLC, et. al.

| APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL<br>☐ **EX PARTE** | CASE NUMBER:<br>37-2021-00053251-CU-PO-CTL |
|---|---|

*NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant *(name):* Michael Tipton                                    is
   a. ☒ the parent of *(name):* Caleb C. Tipton
   b. ☐ the guardian of *(name):*
   c. ☐ the conservator of *(name):*
   d. ☐ a party to the suit.
   e. ☐ the minor to be represented *(if the minor is 14 years of age or older).*
   f. ☐ another interested person *(specify capacity):*

2. This application seeks the appointment of the following person as guardian ad litem *(state name, address, and telephone number):*
   Michael Tipton                                              ph: Care of: (619) 399-7700
   138 Rupertus Drive, San Clemente CA 92672

3. The guardian ad litem is to represent the interests of the following person *(state name, address, and telephone number):*
   Caleb C. Tipton                                             ph: Care of: (619) 399-7700
   138 Rupertus Drive, San Clemente CA 92672

4. The person to be represented is:
   a. ☒ a minor *(date of birth):* 8/11/2008
   b. ☐ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☒ the person named in item 3 has a cause or causes of action on which suit should be brought *(describe):*
   Caleb C. Tipton lived at the subject rental property in San Diego, which was rendered substandard and uninhabitable by Defendants' negligence and wrongful conduct. This allowed the property to suffer chronic water and moisture intrusion, and high humidity levels, resulting in damp rooms and microbial contamination/mold causing personal injury and damages to Caleb C. Tipton as described in the Complaint.

   ✔ Continued on Attachment 5a.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 JCC (Rev. January 1, 2008) | **APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL** | Code of Civil Procedure,<br>§ 372 et seq.<br>Westlaw Doc & Form Builder™ |
|---|---|---|

CIV-010

| PLAINTIFF/PETITIONER: Mande Tipton, et. al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Camp Pendleton & Quantico Housing, LLC, et. al. | |

5.  b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

    c. ☒ the person named in item 3 has no guardian or conservator of his or her estate.

    d. ☒ the appointment of a guardian ad litem is necessary for the following reasons *(specify)*:

    Plaintiff Caleb C. Tipton is a minor child and the appointment of a guardian ad litem is necessary to represent his interests in this action where he is named a litigant alleging multiple causes of action against multiple Defendants.

    ☐ Continued on Attachment 5d.

6.  The proposed guardian ad litem's relationship to the person he or she will be representing is:

    a. ☒ related *(state relationship)*: Father

    b. ☐ not related *(specify capacity)*:

7.  The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. *(If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed)*:

    ☐ Continued on Attachment 7.

Christian B. Clark

──────────────────────────

(TYPE OR PRINT NAME)                                      (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 12/15/21

Michael Tipton                                           *Michael Tipton*

──────────────────────────

(TYPE OR PRINT NAME)                                      (SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.
Date: 12/15/21

Michael Tipton                                           *Michael Tipton*

──────────────────────────

(TYPE OR PRINT NAME)                                      (SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

## ORDER   ☐ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that *(name)*:  Michael Tipton
is hereby appointed as the guardian ad litem for *(name)*: Caleb C. Tipton
for the reasons set forth in item 5 of the application.
Date:

──────────────────────────

JUDICIAL OFFICER

SIGNATURE FOLLOWS LAST ATTACHMENT

CIV-010 JCC [Rev. January 1, 2008]          **APPLICATION AND ORDER FOR APPOINTMENT**          Page 2 of 2
**OF GUARDIAN AD LITEM—CIVIL**

| CASE TITLE | CASE NUMBER |
|---|---|
| Mande Tipton, et. al. v. Camp Pendleton & Quantico Housing, LLC, et. al. | |

**ATTACHMENT TO JC FORM #CIV-010 (APPLICATION FOR GUARDIAN AD LITEM – CIVIL)**

8.  I, *(name):* Michael Tipton _____, declare that I am the ☒ parent ☐ guardian ☐ conservator
    of *(name):* Caleb C. Tipton _____ and:

    a. I ☐ am ☒ am not asserting individual claims or defenses in these proceedings.
    b. The minor ☐ is ☒ is not the subject of a juvenile dependency proceeding.
    c. The minor ☐ is ☒ is not the subject of a probate guardianship.
    d. The minor ☐ is ☒ is not the subject of a custody order.  (If a custody order is in effect, the most recent order must be attached.)

9.  Notice of these proceedings has:

    a. ☒ been provided to all of the minor's parents.
    b. ☐ not been provided to all of the minor's parents because:
        i.   ☐ I have sole legal custody of the minor identified in this application and have attached a copy of the current custody order.
        ii.  ☐ the other parent is deceased.
        iii. ☐ other: _____

_____

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 15, 2021 _____

Michael Tipton _____
Type or print name

*Michael Tipton*
Signature

---

**ORDER  ☐ EX PARTE**

The court finds that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the Application and Order for Appointment of Guardian ad Litem – Civil (JC Form #CIV-010), as requested.

The court orders that *(name):* Michael Tipton _____ is hereby appointed as the guardian ad litem for
*(name):* Caleb C Tipton _____ for the reasons set forth in item 5 of the Application and Order for
Appointment of Guardian ad Litem – Civil (JC Form #CIV-010).

Date: 12/21/2021 _____

*Carolyn M. Caietti*
Judge of the Superior Court

---

SDSC CIV-383 (New 1/17)
Mandatory Form

**ATTACHMENT TO JC FORM #CIV-010
(APPLICATION FOR GUARDIAN AD LITEM – CIVIL)**

Lenden Webb, Esq. (236377)
Christian B. Clark, Esq. (330380)
**WEBB LAW GROUP, APC**
10509 Vista Sorrento Pkwy, Suite 450
San Diego, CA 92121
Telephone: (559) 431-4888
Facsimile: (559) 821-4500
Email: LWebb@WebbLawgroup.com
Email: CClark@WebbLawGroup.com

Attorneys for Plaintiffs

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**12/15/2021** at 12:13:17 PM
Clerk of the Superior Court
By Regina Chanez, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| MANDE TIPTON, an individual; CALEB C. TIPTON, a minor, by and through their guardian ad litem MICHAEL TIPTON; LONDYN J. TIPTON, a minor, by and through their guardian ad litem MICHAEL TIPTON;<br><br>Plaintiffs,<br><br>v.<br><br>CAMP PENDLETON & QUANTICO HOUSING, LLC, a Delaware limited liability company; LPC PENDLETON QUANTICO PM LP, a Delaware limited partnership; LINCOLN MILITARY PROPERTY MANAGEMENT LP, a Delaware limited partnership; and DOES 1 THROUGH 50, inclusive;<br><br>Defendants. | CASE NO. 37-2021-00053251-CU-PO-CTL<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**1. NEGLIGENCE**<br>**2. NUISANCE**<br>**3. NEGLIGENT MISREPRESENTATION**<br>**4. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br>**5. BREACH OF IMPLIED WARRANTY OF HABILITABILITY**<br>**6. BREACH OF IMPLIED COVENANT OF QUIET USE AND ENJOYMENT**<br>**7. RENT ABATEMENT**<br>**8. GROSS NEGLIGENCE**<br>**9. PREMISES LIABILITY**<br>**10. FRAUD – CONCEALMENT**<br>**11. CONSTRUCTIVE (WRONGFUL) EVICTION**<br>**12. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |

///

///

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 1 -

1

**PARTIES**

2   1.     Plaintiff MANDE TIPTON is an individual and at all times mentioned in this

3   complaint was a resident of San Diego County, California and resided at 138 Rupertus Drive, San

4   Clemente, California 92672 ("Leased Property").

5   2.     Plaintiff CALEB C. TIPTON, a minor, by and through their guardian ad litem,

6   MICHAEL TIPTON, is an individual and at all times mentioned in this complaint was a resident

7   of San Clemente, California and resided at the Leased Property.

8   3.     Plaintiff LONDYN J. TIPTON, a minor, by and through her guardian ad litem,

9   MICHAEL TIPTON, is an individual and at all times mentioned in this complaint was a resident

10   of San Clemente, California and resided at the Leased Property.

11   4.     Plaintiffs are informed and believe and thereon allege that Defendant CAMP

12   PENDLETON & QUANTICO HOUSING, LLC, a Delaware limited liability company,

13   hereinafter "CPQH," at all relevant times was and is a foreign limited liability company registered

14   and authorized to do business, and was and is doing business, in the State of California, and

15   participated in the ownership, management, leasing, maintenance, and/or attempted and negligent

16   repair of the Leased Property.  Plaintiffs are informed and believe and thereon allege that at all

17   relevant times CPQH was the owner, landlord, and/or lessor of the Leased Property.

18   5.     Plaintiffs are informed and believe and thereon allege that Defendant LPC

19   PENDLETON QUANTICO PM LP, a Delaware limited partnership, hereinafter "LPC

20   PENDLETON," at all relevant times was and is a foreign limited partnership registered and

21   authorized to do business, and was and is doing business, in the State of California, and participated

22   in the ownership, management, leasing, maintenance, and/or attempted and negligent repair of the

23   Leased Property.  Plaintiffs are informed and believe and thereon allege that at all relevant times

24   LPC PENDLETON was the agent for CPQH with respect to ownership, management, leasing,

25   maintenance, and/or attempted and negligent repair Leased Property.

26   6.     Plaintiffs are informed and believe and thereon allege that Defendant LINCOLN

27   MILITARY PROPERTY MANAGEMENT LP, a Delaware limited partnership, hereinafter

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 2 -

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1 "LINCOLN MILITARY HOUSING," at all relevant times was and is a foreign limited partnership
2 registered and authorized to do business, and was and is doing business, in the State of California,
3 and participated in the ownership, management, leasing, maintenance, and/or attempted and
4 negligent repair of the Leased Property. Plaintiffs are informed and believe and thereon allege that
5 at all relevant times LINCOLN MILITARY HOUSING was the agent for CPQH with respect to
6 ownership, management, leasing, maintenance, and/or attempted and negligent repair Leased
7 Property.

8    7.    The true names and capacities, whether individual, corporate, associate, or
9 otherwise of Defendants designated as DOES 1 THROUGH 50 inclusive are unknown to Plaintiffs
10 who therefore sue said Defendants by such fictitious names. Plaintiffs will amend this complaint
11 to set forth such Defendants' true names and capacities, together with the appropriate charging
12 allegations, when the same have been ascertained. Plaintiffs are informed and believe and based
13 thereon allege that Defendants DOES 1 THROUGH 50, inclusive, were and are qualified to do
14 business in the State of California and are responsible to Plaintiff thus far on the facts and theories
15 herein alleged.

16    8.    Plaintiffs are informed and believe and based thereon allege that each Defendant
17 and each Defendant sued as DOE Defendants, was acting for itself or as an agent, servant, partner,
18 employee, or on behalf of a co-Defendant, in doing the things mentioned and alleged in this
19 complaint and was acting in the scope of his or her authority as such an agent, servant, partner,
20 employee, or co-Defendants or otherwise with the permission and consent of his or her co-
21 Defendants.

22    9.    The lease agreement mentioned in this Complaint was entered into and to be
23 performed in the City of San Diego, County of San Diego, State of California, and the Plaintiffs
24 and Defendants at all times relevant herein reside and/or resided and/or are located and performed
25 significant business in the County of San Diego, State of California.

26 ///

27 ///

28

<center>COMPLAINT
- 3 -</center>

**WEBB LAW GROUP, APC**
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1

## FACTUAL ALLEGATIONS

2      10.    Plaintiffs lived at and occupied the Leased Property as tenants during the period of

3  July 19, 2019 through October 28, 2020.

4      11.    Plaintiffs are former residents and tenants of the Leased Property under a written

5  lease agreement ("Lease") executed by Defendants as owners/agents of the Leased Property. The

6  lease was signed on or about July 18, 2019. Under the terms of the Lease, Plaintiffs paid rent, a

7  security deposit, and other fees and costs.

8      12.    The Lease expressly acknowledges that the residential use of the Leased Property

9  was for Plaintiffs.

10      13.    LINCOLN MILITARY HOUSING failed to provide or maintain a reasonably

11  habitable environment for Plaintiffs, despite repeated fraudulent representations of habitability,

12  upon which Plaintiffs were intended to rely and in fact did rely.

13      14.    Between July 26, 2019 and October 22, 2020, Plaintiffs reported approximately

14  thirty-one (31) unique water intrusion, leak, mold, and mildew issues regarding the Leased

15  Property to LINCOLN MILITARY HOUSING. By the Summer of 2020, the issues became so

16  severe that the family reached a breaking point and demanded resolution.

17      15.    Some examples of issues with the Leased Property that were specifically reported

18  to LINCOLN MILITARY HOUSING include: a leak in the hallway bathroom reported on July

19  26, 2019; a leak under the kitchen sink reported on July 26, 2019; a leak in the backyard of the

20  Leased Property reported on August 6, 2019; issues with the sewer line reported on December 31,

21  2019; a leak in the front yard of the Leased Property reported on January 23, 2020; a leak in the

22  bathroom reported on January 24, 2020; discolored caulking in both bathrooms on the property

23  reported on February 5, 2020; discoloration of the baseboard of the guest room due to suspected

24  water damage reported on February 7, 2020; issues with caulking on the property reported on June

25  9, 2020; a dishwasher flood reported on June 26, 2020; a leak in the hallway bathroom sink

26  reported on July 16, 2020; visible mold in the children's bedroom reported on August 13, 2020;

27  flooding of the kitchen faucet reported on September 30, 2020; a leak in the guest bathroom

28

**COMPLAINT**
- 4 -

1  reported on October 15, 2020; a leak in the master bathroom reported on October 15, 2020; visible
2  mold next to the dishwasher reported on October 15, 2020; a leak of the bathroom sink reported
3  on October 19, 2020; a leak from a pipe under the washing machine reported on October 19, 2020;
4  a leak in the shower reported on October 20, 2020; and a second leak in the shower of the master
5  bedroom reported on October 21, 2020.

6      16.     In addition to the above-listed examples of water-intrusion issues on the property,
7  Plaintiffs frequently noticed, and reported to LINCOLN MILITARY HOUSING, extremely low
8  water pressure and that their front and side yards were soft and spongy underfoot.

9      17.     In addition to the above-listed examples of water-intrusion issues on the property,
10  Plaintiffs also began to noticed a musty odor in the home, especially in Plaintiff Caleb C. Tipton's
11  bedroom, after approximately one (1) month of living on the property .

12      18.     In addition to the above-listed examples of water intrusion issues on the property,
13  Plaintiffs also experienced many issues with rodents since moving into the Leased Property.
14  Between August 2019 and November 2020, Plaintiffs had seen an estimated 20-25 mice on the
15  property, and had reported the issue to LINCOLN MILITARY HOSUING numerous times. The
16  issue was never resolved by LINCOLN MILITARY HOUSING.

17      19.     Plaintiffs specifically reported visible mold on the Leased Property to LINCOLN
18  MILITARY HOUSING on August 13, 2020.

19      20.     On or around August 13, 2020, Plaintiff Mande Tipton visited the Lincoln Military
20  Housing Office at 202 Chaisson Drive in San Clemente, California 92672 regarding the suspected
21  mold, mildew, and moisture issues on the leased property. LINCOLN MILITARY HOUSING's
22  front-desk employee, Debby Lambert, retrieved one of LINCOLN MILITARY HOUSING's
23  maintenance supervisors, Nico Zander, who agreed to inspect the Leased Property.

24      21.     On or around August 13, 2020 Nico Zander visited the Leased Property with a
25  LINCOLN MILITARY HOUSING maintenance technician named Toni. During the walkthrough
26  of the property, Nico Zander told Plaintiffs that a mold assessment would not be performed on the
27  Leased Property despite Plaintiffs' complaints and concerns because a prior inspection by

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1  LINCOLN MILITARY HOUSING's Preventative Maintenance Inspection team did not reveal
2  any mold or moisture issues on the Leased Property.

3    22.    On or around October 6, 2020 Plaintiff Mande Tipton went to the MedHero
4  Advanced Urgent Care and Wellness Center in San Clemente after experiencing severe neck pain
5  and difficulty breathing. Plaintiff Mande Tipton was prescribed an Albuterol Sulfate aerosol
6  inhaler for these symptoms. Plaintiff Mande Tipton had only been prescribed an inhaler once
7  previously in 2014 due to severe environmental allergies experienced while at Camp LeJeune,
8  North Carolina. However, aside from that singular incident, Plaintiff Mande Tipton has never
9  needed an inhaler, and had never experienced the symptoms she felt in October, 2020.

10    23.    However, Plaintiff Mande Tipton first start to experience symptoms in February,
11  2020. During that month, Plaintiff Mande Tipton experienced difficulty breathing, bloody sputum,
12  and a lost voice .

13    24.    Plaintiff Mande Tipton was a competitive athlete that was identified as a
14  distinguished participant during the 2018 Marine Corp. Marathon Race Series. Plaintiff Mande
15  Tipton has run Triathlons, Marathons, and multiple competitive long-distance races. In 2020 alone,
16  Plaintiff Mande Tipton has logged over 252 miles, and considers the sport a cherished hobby.

17    25.    Starting on or around October, 2020 Plaintiff Mande Tipton was no longer able to
18  run in the manner she had before due to the severe physical symptoms she experienced.

19    26.    On or around January, 2020 Plaintiff Caleb C. Tipton began to experience apnea,
20  difficulty breathing, and sleep walking.  Plaintiff Caleb C. Tipton had been diagnosed with apnea
21  and sleep walking previously, but did not experience any symptoms after the move until January,
22  2020.

23    27.    On or around October 8, 2020 Plaintiff Caleb C. Tipton developed a large rash on
24  the side of his body that grew and spread through Caleb's torso, arms, neck, and hairline.

25    28.    Plaintiff Caleb C. Tipton also began to experience increased impulsive behaviors
26  starting on or around the Spring of 2020.

27

28

<div align="center">COMPLAINT<br>- 6 -</div>

29.     Plaintiffs contacted LINCOLN regarding these issues in August, 2020 and were assured that mold was not an issue on the Leased Property.

30.     On or around October 15, 2020 Plaintiff Londyn J. Tipton was referred for psychiatric evaluation at the Naval Hospital Camp Pendleton due to an increasing presence of psychological symptoms, including a self-described feeling of not being "real".

31.     On or around October 15, 2020 Plaintiff Caleb C. Tipton was taken to the Naval Hospital Camp Pendleton for the growing rash and behavioral symptoms he continued to exhibit.

32.     On or around October 15, 2020 Plaintiffs discovered black mold on the vinyl in the master bathroom of the Leased Property, and next to the dishwasher in the kitchen of the Leased Property.

33.     On the same day, Plaintiffs also discovered a discolored baseboard in the children's' bathroom, and leaks under both bathroom sinks.

34.     On or around October 15, 2020 at approximately 2:30PM (PST), on the same day as the black mold, discolored baseboard, and leaks were discovered, Plaintiff Mande Tipton reported the issue in person at the LINCOLN MILITARY HOUSING district office.

35.     On the same day at approximately 5:00PM (PST) Plaintiff Mande Tipton visited the LINCOLN MILITARY HOUSING office, notifying them that no one had showed up yet or called to follow-up on the issues reported earlier that day.

36.     On the same day at approximately 6:15PM (PST) a LINCOLN MILITARY HOUSING maintenance technician named Kyle arrived at the home to address the Plaintiffs concerns regarding the Leased Property, following another follow-up call at 5:15PM (PST) made by Plaintiff Mande Tipton to the Emergency Maintenance Line.

37.     On the same day, while Kyle was servicing the Leased Property, Plaintiff Mande Tipton discovered more evidence of mold in the master bathroom, and realized the extent of the mold problem on the Leased Property was far worse than previously thought. It was at this time that Plaintiff Mande Tipton first connected the mold on the property to the bizarre health issues Plaintiffs had been experiencing.

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

COMPLAINT
- 7 -

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

38.     On or around October 16, 2020, one of LINCOLN MILITARY HOUSING's maintenance technicians, Kyle, returned to the property to continue working on the issues in the home. At approximately 8:45AM (PST), Plaintiff Mande Tipton visited the LINCOLN MILITARY HOUSING office in-person and reported the suspected mold issue to Nico Zander. Plaintiff Mande Tipton told Nico Zander that she wanted the mold to be inspected, the air ducts on the property to be cleaned, and the carpets, which had become damp in various places, to be removed.

39.     On the same day, Kyle and Plaintiff Mande Tipton inspected various areas of the property and discovered high moisture readings throughout the property.

40.     On information and belief no air quality nor swab testing was conducted around this time.

41.     On the same day, LINCOLN MILITARY HOUSING cut a portion of the wall out of the bathroom and installed a blower to dry the region. LINCOLN MILITARY HOUSING representatives told Plaintiffs that they could continue to use the bathroom and live on the property despite the fact that the wall had been torn open, mold had been discovered on the property, and the blower was to be left on at all times. Plaintiffs insisted on multiple occasions that LINCOLN MILITARY HOUSING conduct testing and investigate the Leased Property for mold, but LINCOLN MILITARY HOUSING continued to refuse.

42.     The hole was left open in the wall of the Leased Property for a period of three (3) days. All the while, the blower was kept on.

43.     On information and belief, the removal of the wall and the installation of the blower pushed spores from the toxic black mold throughout the air in the house.

44.     On or around October 16, 2020, Plaintiff Caleb Tipton was prescribed a new medication by a psychiatrist for continued and worsening impulsive behaviors.

45.     On or around October 16, 2020 Plaintiff Mande Tipton visited the Naval Hospital Camp Pendleton for continuing neck pain, breathing problems, and continuing health issues experienced by the entire family.

**COMPLAINT**
- 8 -

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

46.     On or around October 19, 2020, LINCOLN MILITARY HOUSING returned to the Leased Property and found more evidence of high moisture readings. Specifically, LINCOLN MILITARY HOUSING discovered extremely high moisture readings in the closet of the master bedroom. On the same date, LINCOLN MILITARY HOUSING fixed the wall in the master bathroom and moved the blower to the closet of the master bedroom where one high moisture reading was found.

47.     On or around October 19, 2020 Plaintiffs called LINCOLN MILITARY HOUSING's district office regarding Plaintiffs' concerns with the property, and regarding the family's ongoing health concerns. Plaintiffs left a follow-up voicemail regarding the same with LINCOLN MILITARY HOUSING's regional property manager, Amanda Begin.

48.     On or around October 19, 2020 LINCOLN MILITARY HOUSING's regional customer service representative, Elvira Martinez, returned Plaintiffs' call and scheduled a walk-through of the property.

49.     On or around October 20, 2020 Plaintiffs once again showed their concerns regarding the Leased Property to LINCOLN MILITARY HOUSING representatives during a walk-through of the Leased Property. LINCOLN MILITARY HOUSING representatives in attendance included Nicole Weiler, Elvira Martinez, Nico Zander, Mark Mitchell, Davy Tremble, and Judy Centanaro.

50.     During the walk-through of the property Plaintiffs once again showed LINCOLN MILITARY HOUSING representatives the issues on the Leased Property, including the high moisture readings of the walls, water damage, ongoing leaks, visible mold, and mold smell that was present on the Leased Property. Despite allegedly fixing these issues during their prior visits, the issues persisted on the property.

51.     During the walk-through Plaintiffs specifically showed LINCOLN MILITARY HOUSING's representatives visible mold under the sink in the kitchen, next to the dishwasher, and in the laundry room of the home. LINCOLN MILITARY HOSUING representatives in

1  attendance represented to Plaintiffs that the spots in the laundry room and next to the dishwasher

2  were not mold.

3      52.    During  the  walk-through  Plaintiffs  also  specifically  showed  LINCOLN

4  MILITARY HOUSING's representatives ongoing leaks in the kitchen sink, walls throughout the

5  home that had high moisture readings, and damp areas of carpeting throughout the master bedroom

6  closet.

7      53.    On or around October 20, 2020 LINCOLN MILITARY HOUSING representative

8  Nico Zander represented to Plaintiffs that the water damage on the baseboards of the hallway

9  bathroom was caused by minor Plaintiffs urinating on the baseboards, and was not caused by water

10  intrusion issues or mold.

11     54.    On or around October 20, 2020 LINCOLN MILITARY HOUSING representative

12  Nico Zander represented to Plaintiffs that the water damage in the closet of the master bedroom

13  was due to a spill of "baby oil" and was not caused by water intrusion issues or mold.

14     55.    On  or  around  October  20,  2020  Plaintiffs  went  into  the  main  LINCOLN

15  MILITARY HOUSING office where LINCOLN MILITARY HOUSING representative Judy

16  Centanaro told Plaintiffs that "everyone [had] heard about [their] son's rash".

17     56.    Between October 16, 2020 and October 20, 2020 several LINCOLN MILITARY

18  HOUSING representatives attempted to blame the water intrusion issues in the home on Plaintiffs,

19  claiming on several occasions that the problems in the home were caused by the splash guards in

20  the master bedroom. Plaintiffs informed LINCOLN MILITARY HOUSING representatives that

21  this was not the case, and that adequate precautions were taken by Plaintiffs each time the shower

22  was used. Despite making this representation, LINCOLN MILITARY HOUSING did not make

23  any effort or attempt to fix the splash guards.

24     57.    On or around October 21, 2020, Plaintiffs once again noticed water leaking from

25  underneath the shower on the Leased Property and contacted LINCOLN MILITARY HOUSING

26  regarding the problem. Nico Zander met with Plaintiffs at the Leased Property and represented

27  that the issue was not a water leak, but an issue with the glue that held down the vinyl near the

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1   shower. Plaintiffs were suspicious of this claim given the visible water, and the numerous other

2   leaks, mold, and water intrusion issues they had experienced on the property.

3       58.    On the same day, Plaintiffs met with LINCOLN MILITARY HOUSING

4   representatives regarding the issues on the property. New moisture readings were taken in the guest

5   bathroom and hallway. Additionally, active mold growth was found by LINCOLN MILITARY

6   HOUSING employee Chris Lawrence after a portion of the wall in the hallway bathroom was

7   removed.

8       59.    After the mold findings were confirmed LINCOLN MILITARY HOUSING

9   representatives Chris, Davy, Nico, Judy, and Shannon offered Plaintiffs temporary lodging while

10  the home would undergo remediation for mold.

11      60.    Due to Plaintiff Caleb C. Tipton's injury prevention requirements as an exceptional

12  family member per the EFMP program (as identified on page seven (7) of Plaintiffs' DDForm

13  2792 (dated March 16, 2019)) Plaintiffs need to live in single-story residences. LINCOLN

14  MILITARY HOUSING did not provide single-story temporary housing to Plaintiffs despite this

15  well-documented need.

16      61.    On information and belief, LINCOLN MILITARY HOUSING arranged for the

17  third party remediation company, Apex Environmental, to inspect the home on October 26.

18  However, on information and belief, Apex Environmental was not authorized to conduct any

19  testing that would determine whether toxic mold actually was present on the property.

20      62.    On October 28, 2020 Plaintiffs arranged for Paradise Environmental to conduct an

21  extensive home inspection, including indoor air sampling, to determine whether toxic mold spores

22  were present on the property. Paradise Environmental independently confirmed high moisture

23  within the home, and discovered "unacceptable and suspicious spore count levels and types."

24  Specifically, elevated levels of Ulocladium spores were detected in multiple areas of the home.

25  According to Paradise Environmental, Ulocladium spores are commonly associated with indoor

26  water damage.

27

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 11 -

63.     On or around November, 2020 Plaintiffs were moved from their home into the Holiday Inn Express, San Clemente by LINCOLN MILITARY HOUSING so that LINCOLN MILITARY HOUSING could conduct a remediation on the property.

64.     On November 3, 2020 Plaintiffs served a Demand to Preserve Discoverable Materials on LINCOLN MILITARY HOUSING's counsel.

65.     On information and belief between November 3, 2020 and November 20, 2020, LINCOLN MILITARY HOUSING representatives, including but not limited to a LINCOLN MILITARAY HOUSING employee Mark Mitchell, continued to work on the property.

66.     On information and belief, on October 29, 2020 LINCOLN MILITARY HOUSING changed the locks on the property.

67.     On information and belief, between November 3, 2020 and November 23, 2020, a representative of LINCOLN MILITARY HOUSING, or multiple representatives, disconnected Plaintiffs' security system on the Leased Property on multiple occasions.

68.     On November 13, 2020 Plaintiffs were allowed to enter the Leased Property the restart the security system. By November 16, 2020 the security system was once again down.

69.     On November 16, 2020 Plaintiff Mande Tipton was allowed to enter the Leased Property to troubleshoot potential issues with the security system, but was escorted off the property before the issues could be resolved.

70.     On November 17, 2020 Plaintiff Mande Tipton was once against allowed to enter the Leased Property to troubleshoot issues with the security system. Plaintiff Mande Tipton was able to fix the system on that date. By November 20, 2020 the security system once again went down.

71.     On November 20, 2020 Plaintiffs once again fixed the security system. By November 23, 2020 the security system once again went down.

72.     Additionally, the doorbell camera on the property stopped working on November 18, 2020.

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 12 -

73.     Plaintiffs arranged for follow-up mold testing to take place on the property at 9:00AM on November 20, 2020 at the Leased Property by Paradise Environmental.

74.     On November 20, 2020 Plaintiff was not allowed inside the Leased Property while Paradise Environmental conducted their test until approximately 11:00AM.

75.     On November 20, 2020 Paradise Environmental was not allowed entrance into the linen closet in the hallway for any purpose.

76.     The November 20, 2020 Paradise Environmental inspection of the Leased Property revealed the existence of a widespread mold problem throughout the property. Paradise Environmental's report indicated "[u]nacceptable spore count levels and types" and "visible mold growth" in seven (7) distinct areas of the home.

77.     A true and correct copy of Paradise Environmental's November 20, 2020 report is attached hereto as Exhibit 1 and is incorporated herein by reference.

78.     LINCOLN MILITARY HOUSING eventually agreed to conduct a remediation, and the Tipton family was displaced from the home.

79.     During the period of construction, the Tipton family had to reside at a Holiday Inn Express in San Clemente, California. LINCOLN MILITARY HOUSING agreed to cover these costs, but allegedly finalized the construction on December 29, 2020 while the Tipton family was visiting family for the holidays. As a result, the Tipton family's belongings remained at the Holiday Inn Express and the Tipton family was forced to incur the costs of the room until they were able to return to San Diego, California, confirm the Leased Property had been properly remediated, and move back into the Leased Property.

80.     The Tipton family was also forced to incur numerous other hard costs associated with the cleaning and restoration of their home following the mold intrusion.

81.     Between January 4, 2021 and January 6, 2021 the Tipton family worked with a company called ServePro San Clemente to clean and/or rid the home of contaminated items. The items that ServePro advised were highly contaminated or difficult to clean were either thrown our

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 13 -

or moved into the garage. Plaintiff Mande Tipton noticed that she experienced a constriction of her airways when she was in close proximity to some of the items in the garage.

82.     On or around Fall 2020, prior the Tipton family informed LINCOLN MILITARY HOUSING, and a representative of Apex, a mold remediation contractor used by LINCOLN MILITARY HOUSING, of standing water in the garage.

83.     Before moving back into the home, the Tipton family had to wait for their remaining personal items to be cleaned by Servepro, and have the property tested by Paradise Environmental. Paradise Environmental tested the Leased Property on January 8, 2021. The property was cleared, and the Tipton family was able to move back into the home on January 12, 2021.

84.     However, once the Tipton family moved back into the Leased Property, they discovered a variety of issues. For example, the Tipton family discovered that dangerously hot water ranging from 149-153 degrees Fahrenheit was coming from the faucets on the Leased Property. The Tipton family immediately notified LINCOLN MILITARY HOUSING of the issue by placing an emergency work order into LINCOLN MILITARY HOUSING's system.

85.     Additionally, the LINCOLN MILITARY HOUSING claimed to have cleaned the Leased Property following the remediation, but the Tipton family discovered personal items covered in paint, various tools and items left scattered around the house, dust throughout the home, and urine on and around the toilets.

86.     Additionally, the Tipton family noticed that the yard continued to have serious puddling, pooling, and water issues. LINCOLN MILITARY HOUSING was informed of this issue by the Tipton family, but despite turning off the sprinkler system and sending an agent to diagnose the problem, LINCOLN MILITARY HOUSING never fixed the problem.

87.     Additionally, after the Tipton family called Paradise Environmental to return to the property on January 8, 2021, the Tipton family discovered that the kitchen had not been properly remediated. This failure occurred in spite of the fact that LINCOLN MILITARY HOUSING was informed of the kitchen issues from the November 20, 2020 report.

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 14 -

88.     The Tipton family immediately notified LINCOLN MILITARY HOUSING of the defect in their prior remediation efforts. Ultimately, the Tipton family was forced to leave the property a second time on or around February, 2021, and to take up residence in the Holiday Inn Express a second time while LINCOLN MILITARY HOUSING attempted to re-fix the kitchen.

89.     Throughout the Winter of 2021, the Tipton family continued to follow-up with their medical providers. While Caleb and Londyn Tipton's health seemed to improve following the remediation, Plaintiff Mande Tipton continued to experience medical issues.

90.     In particular, Mande Tipton continued to experience numerous symptoms including shortness of breath and fatigue. Mande Tipton followed-up with her health care providers and had numerous tests conducted which confirmed a variety of issues related to mold exposure, and on information and belief, caused by the mold exposure. Ultimately, Mande Tipton was recommended by her physician to seek treatment from an out-of-network mold exposure specialist.

91.     On or around Fall 2020, Plaintiff Mande Tipton spoke with Rachel Burkman about the issues the Tipton family had been experiencing on the Leased Property. Rachel Burkman and her family had lived on the Leased Property from approximately July 2016 to June 2019 - just prior to the Tipton family. Rachel Burkman informed Plaintiff Mande Tipton that during the Burkman's tenancy, the laundry room on the Leased Property had mold issues that were never properly fixed by LINCOLN MILITARY HOUSING.

92.     Around this time period, Plaintiff Mande Tipton also corresponded with other prior tenants of the Leased Property that had various issues with the home.

93.     For example, on or around February 2021, Plaintiff Mande Tipton was contacted by the Tipton's neighbor, Julie Simonds, who had lived on the Leased Property from 2013 to 2016. Julie Simonds informed Mande Tipton that from 2013 to 2016 the Leased Property also had numerous leaks and water intrusion issues. For example, during Julie Simonds' tenancy, an excessively moist wall in the kitchen was cut out, the first floor bathroom flooded multiple times, and Ms. Simonds' children's toilets flooded multiple times.

**WEBB LAW GROUP, APC**
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

94.     In addition to the damages described herein, on the information and belief, Plaintiffs will suffer ongoing and future medical damages as a result of their exposure to toxic mold.

95.     Further, Plaintiffs continue to experience tons of housing issues at the Leased Property including but not limited to pest control issues and issues with water pressure.

96.     The conditions complained of herein were not caused by any act or omission of any Plaintiff. Plaintiffs diligently reported all issues to Defendants, and Defendants failed to take any remedial measures.

97.     Further, prior to January 2020, Plaintiffs did not know that the health issues Plaintiffs had been experiencing were caused by Defendants failure to maintain the property. Prior to January 2020, Plaintiffs did not know, nor through the exercise of reasonable diligence could have known, of these injuries and damages.

## FIRST CAUSE OF ACTION

### Negligence

### (By All Plaintiffs Against All Defendants and Does 1-50)

98.     Plaintiffs re-allege and incorporate herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

99.     At all times mentioned in this complaint, Defendants were engaged in the business of owning, leasing, renting, operating, providing, supervising, maintaining, managing, constructing, inspecting, and/or repairing the Leased Property before, during and after Plaintiffs' tenancy.

100.    At all times relevant herein, Defendants owed a non-delegable duty of care to Plaintiffs under the common law and as specified in Civil Code 1714 to exercise due care in the ownership, leasing, operating, maintenance, construction, and management of the Leased Property to avoid foreseeable injury to others. Such due care required Defendants to comply with all building, housing, plumbing, electrical, health and safety codes, civil codes, and other ordinances,

COMPLAINT
- 16 -

1  statutes, regulations and laws regarding the maintenance and operation of residential rental

2  housing.

3    101.    Under the provisions of Civil Code Section 1941, 1941.1, et seq., Health and Safety

4  Codes (including but not limited to California Health and Safety Code Section 17920.3), and

5  applicable building, plumbing, electrical and housing Codes, Defendants and Does 1- 50 were

6  required to put the rented Leased Property in a habitable condition fit for human occupation before

7  renting and to keep and maintain the Leased Property in such condition and to repair all subsequent

8  dilapidations that rendered the Leased Property untenantable.

9    102.    At all times mentioned in this Complaint, Defendants had a duty to Plaintiffs to

10  properly and safely own, lease, rent, operate, provide, supervise, maintain, manage, construct,

11  inspect, and repair the Leased Property so as to make it habitable, safe, and hazard-free, enabling

12  tenants, including Plaintiffs, to quietly enjoy the Leased Property.

13    103.    At all times mentioned in this Complaint, Defendants had a duty to Plaintiffs to use

14  ordinary care for the preservation of the Leased Property and to maintain it in good repair, to repair

15  all deteriorations or injuries to the Leased Property caused by their want of ordinary care and to

16  avoid intentional or reckless damage, destruction, demolition, or deterioration to the Leased

17  Property, its fixtures, components, systems and/or structures.

18    104.    At all times mentioned in this Complaint, Defendants owed Plaintiffs a legal duty

19  to exercise reasonable care to ensure that such space was safe to occupy, and that Plaintiffs'

20  occupancy of such space would not result in exposure to anything that would negatively affect

21  Plaintiffs' health, including but not limited to excess moisture, water damage, and/or microbial

22  contamination.

23    105.    At all times mentioned in this complaint, Defendants had a duty to Plaintiffs to

24  properly and safely repair, construct, demolish, remove, refurbish, remodel, restore,

25  remediate, and ·clean the Leased Property and its building materials, so as to maintain the

26  Leased Property in a habitable, safe, and hazard-free condition.

27

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 17 -

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

106.    Plaintiffs are informed and believe and, on that basis, allege that Defendants knew or should have known at all times relevant to this Complaint that the Leased Property suffered from the microbial mold contamination, rendering the Leased Property substandard and untenantable as alleged herein.

107.    At the time Defendants and Does 1-50 rented the Leased Property to Plaintiffs, and thereafter, Defendants and Does 1-50 so negligently owned, leased, rented, operated, managed, maintained, and repaired the Leased Property so as to cause it to be uninhabitable and unfit, unhealthy, and unsafe for human occupation in that the Leased Property suffered from design and construction defects and deficiencies, causing and allowing water and moisture intrusion into the living spaces of the Leased Property, causing and allowing the Leased Property to become contaminated with excess moisture and humidity and microbial growth, and otherwise failed to comply with those applicable housing, plumbing and building codes, Civil Codes, Health and Safety Codes, Federal and State Regulation concerning residential rental properties, including but not limited to Sections 1714 and 1941 et seq., which materially affect the health and safety of the Plaintiffs as tenants and their invited guests.

108.    Defendants negligently failed to exercise the due care owed to Plaintiffs in owning, leasing, maintaining, operating, and repairing and overseeing the Leased Property, as alleged herein, and furthermore have caused and/or failed to remediate damage and deterioration to the Leased Property, components, systems, materials, structures, and fixtures therein, among other items as already alleged herein.

109.    Defendants breached their legal duty to Plaintiffs by negligently, improperly, recklessly and in a non-controlled manner, exposing Plaintiffs to excessive moisture, dampness, and humidity, as well as microbial contamination, while Plaintiffs were living in the Leased Property, as alleged herein. Such breach was a legal and proximate cause of damage to Plaintiffs as alleged herein.

**COMPLAINT**
- 18 -

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

110.   Defendants further breached their legal duties to Plaintiffs because they improperly, negligently, carelessly and in a reckless disregard for Plaintiffs' safety and rights, disturbed and/or caused to be disturbed microbial growth and contamination at the Leased Property, in such a manner so as to expose Plaintiffs to such contamination and cause injury to Plaintiffs and did so by failing to exercise due care.

111.   Defendants further breached their duties of care to Plaintiffs and negligently caused Plaintiffs to be injured by Defendants' tortious acts, omissions and conduct, by the following conduct:

a.   The failure to provide Plaintiffs with a reasonably safe and habitable premises in which to live;

b.   The failure to take reasonable general precautions to prevent injury to Plaintiffs;

c.   The failure to provide, recommend, or require containment, protective clothing, hoods, respirators, ventilators or other apparatus for the protection of Plaintiffs;

d.   By negligently and recklessly renting and maintaining the premises as set forth above and as defined by, but not limited to, Civil Code 1714 et seq.; negligently and recklessly violating the applicable building, health and safety codes, ordinances, statutes and laws; and negligently failing to correct such unlawful conditions so as to make the premises fit for human habitation;

e.   The failure to cure defects and deficiencies in the Leased Property which were known or should have been known, which led to increased moisture, odors, and pervasive microbial growth and. contamination in and around the interior living spaces of the Leased Property;

f.   The failure to comply with all applicable building, health & safety, housing, plumbing, and civil codes, as well as other applicable laws, codes, regulations, and ordinances for rental properties concerning the tenants' health and safety;

g.      The failure to consult, read and utilize current literature regarding microbial contamination, indoor air quality and "sick building syndrome" and other materials, including those produced by the EPA and federal and state agencies for landlords, residential building owners and managers; and

h.      The failure to conduct adequate maintenance, repair and inspection, including failing to remedy known building code violations such as leaks, excess moisture, and microbial contamination, and others as alleged herein.

112.    The active negligence and failures to abide by applicable standards of care by Defendants constitutes negligence per se because of violations of applicable statutes, codes, and ordinances which led to injury of foreseeable parties intended to be protected by such codes, ordinances and statutes, including Plaintiffs.

113.    As a direct and proximate result of Defendants' and Does 1-50 negligence as alleged above, the Leased Property was in disrepair and not maintained, so as to be uninhabitable and unfit for human occupation in that, among other things, Defendants and Does 1-50, and each of them, carelessly and negligently failed to investigate, remediate, and maintain in good repair the building components, and as a proximate result caused and allowed to exist water/moisture intrusion into living spaces causing microbial growth and indoor air contamination. None of these conditions were known to Plaintiff at the time they moved into the premises.

114.    As a direct and proximate result of Defendants' breaches as alleged herein, Plaintiffs sustained injury to their health and strength and to their bodies as alleged herein, have suffered severe resulting distress, anxiety, worry, and frustration, and incurred medical expenses in the treatment thereof, all in an amount to be proven at trial.

115.    As a direct and proximate result of the above-described conduct and omissions of Defendants, Plaintiffs have suffered damage to their respiratory systems, conscious pain, suffering and emotional distress, in a sum to be determined according to proof at trial.

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1  116.  As a further direct and proximate result of the tortious acts, omissions and conduct
2  of Defendants, Plaintiffs have sustained, and/or are certain in the future to sustain, losses, injuries
3  and damages as follows:

4      a.  Expenditures for past, present and future medical services and other curative
5          treatment and items in connection with the care of Plaintiffs' injuries, including
6          costs of insurance, in a sum to be determined according to proof at trial; and

7      b.  Expenditures for the replacement or cleaning of all Plaintiffs' personal property
8          and belongings within the Leased Property.

9  117.  As a further direct and proximate result of Defendants' negligent and wrongful
10  conduct and omissions as alleged herein, Plaintiffs have suffered mental stress, emotional distress,
11  discomfort, annoyance, anxiety, physical injuries, illness, pain and suffering, property damage and
12  lost income; all to their general and specific damage in an amount to be determined at trial but
13  which amount is within the jurisdictional requirements of this Court.

14  118.  As a further proximate result of Defendants' and Does I-50's negligence, Plaintiffs
15  suffered property damage and economic loss including, but not limited to, loss of use of the Leased
16  Property; loss of use of personal property items (furnishings, clothes, bedding, and other household
17  items and life necessities); as well as moving expenses; lost rental payments; alternative housing
18  costs, including but not limited to costs to locate a suitable alternative rental property and a security
19  deposit for an alternative rental property; cleaning expenses and loss of income; all to their further
20  damage in an amount to be proven at trial.

21  119.  It is further alleged that Defendants and Does 1-50 failed to properly investigate,
22  repair, remediate and restore the Leased Property, to place the Leased Property into a habitable,
23  safe building condition and Plaintiffs relied upon Defendants' implied representations of
24  habitability to their respective detriment, injury, and damage.

25  120.  Plaintiffs are entitled to recover their attorneys fees under the subject lease
26  agreement entered into between the parties. Plaintiffs have hired a law office to prosecute their
27  claims and are entitled to their attorneys' fees and costs after trial in this matter.

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 21 -

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

## SECOND CAUSE OF ACTION

### Nuisance

### (By All Plaintiffs against All Defendants and Does 1-50)

121.   Plaintiffs re-allege and incorporate herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

122.   The defective and dangerous conditions of the Subject Property as alleged in this Complaint constitute a nuisance within the meaning of California Civil Code Section 3479 and California Code of Civil Procedure Section 731 in that they deprived Plaintiffs of the safe, healthy, and comfortable use of the Subject Property and in that said conditions were injurious to the health and welfare of Plaintiffs and/or Plaintiffs' property, and that the conditions and/or injuries created a substantial and unreasonable interference with Plaintiffs'' peaceful and quiet enjoyment of their home.

123.   Plaintiffs are informed and believe, and based thereon allege, that Defendants, and each of them, by their acts, conduct, failure to act, and/or omissions, created, maintained, exacerbated, and concealed a nuisance and did not take any reasonable steps to immediately abate said nuisance, although requested to do so.

124.   As a proximate result of Defendants maintenance of the nuisance, Plaintiffs suffered discomfort and annoyance, all to their general damage, in an amount to be proven at trial.

125.   As a further proximate result of Defendants' conduct, Plaintiffs suffered property damage and economic loss including, but not limited to, loss of use of the Subject Property, loss of use of personal property (furnishings, clothes, bedding, and other household items and life necessities), as well as moving expenses; lost rental payments; alternative housing costs, including but not limited to costs to locate a suitable alternative rental property and a security deposit for an alternative rental property; cleaning expenses and loss of income; all to their further damage in an amount to be proven at trial.

126.   In maintaining the nuisance, Defendants acted with full knowledge of the foreseeable consequences thereof and of the damage being caused to Plaintiffs. Despite this

1  knowledge Defendants failed to abate the nuisance by repairing the uninhabitable, defective, and
2  dangerous conditions of the subject property.

3      127.    As a result of Defendants' conduct, Plaintiffs have been, and continue to be, subject
4  to physical injuries, including but not limited to those alleged herein, which are seriously damaging
5  their health and destroying their quality of life in amount not ascertainable at this time, but which
6  will be proven at the time of trial.

7      128.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered
8  damage to respiratory systems, mental anguish, conscious pain, suffering and emotional distress,
9  emotional distress, discomfort, annoyance, anxiety, physical injuries, illness, property damage,
10  lost income, and other forms of general and specific damage in an amount to be determined at trial
11  but which amount is within the jurisdictional requirements of this Court.

12                          **THIRD CAUSE OF ACTION**
13                          **Negligent Misrepresentation**
14              **(By All Plaintiffs Against All Defendants and Does 1-50)**

15      129.    Plaintiffs re-allege and incorporate herein and by reference each and every previous
16  and subsequent allegation as though fully set forth herein.

17      130.    Defendants had a duty to Plaintiffs to assure that any representations affirmatively
18  made to Plaintiffs regarding the Subject Property were true.

19      131.    On multiple occasions as described in this Complaint, Defendants represented to
20  Plaintiffs that they would remediate the microbial mold contamination.

21      132.    Defendants represented to Plaintiffs orally and in writing on multiple occasions that
22  Defendants would remediate the problems on the property, including but not limited to fixing the
23  mold issues on the property.

24      133.    Instead of adequately testing for mold or fixing the problems causing the mold,
25  Defendants merely ignored the problem, and represented that there was no issue to Plaintiffs. For
26  instance, on or around October 21, 2020, Plaintiffs once again noticed water leaking from
27  underneath the shower on the Leased Property and contacted LINCOLN MILITARY HOUSING
28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 23 -

regarding the problem. Nico Zander met with Plaintiffs at the Leased Property and represented that the issue was not a water leak, but an issue with the glue that held down the vinyl near the shower. Plaintiffs were suspicious of this claim given the visible water, and the numerous other leaks, mold, and water intrusion issues they had experienced on the property.

134.    The wall of the bathroom where this leak was occurring was previously torn open and despite representations by LINCOLN MILITARY HOUSING that the issue had been fixed, began leaking against just a few days later.

135.    In making the intentional affirmative misrepresentations of material fact as described herein, even if Defendants believed them to be true at the time made, they made such statements and misrepresentations without any reasonable basis for believing them to be true and should have known them to be false. Defendants had no reasonable grounds for believing their representations to Plaintiffs were true at the time they made them.

136.    Despite the extremely limited testing, on information and belief, Defendants represented to Plaintiffs that the property was safe for occupation and did not release Plaintiffs from their lease.

137.    In making the affirmative misrepresentations of material fact as described herein, even if Defendants believed them to be true at the time made, they made such statements and misrepresentations without any reasonable basis for believing them to be true and should have known them to be false. Defendants had no reasonable grounds for believing their representations to Plaintiffs were true at the time they made them.

138.    Defendants made the affirmative misrepresentations and statements of material fact about the Subject Property as described herein with the intent to induce Plaintiffs to rely on them and with the intent to induce Plaintiffs to remain residing in the Subject Property and continue to pay monthly rent.

139.    Plaintiffs reasonably and justifiably relied on Defendants misrepresentations to Plaintiffs detriment, injury, and damage.

140.    As a direct and proximate result of such negligent misrepresentations by Defendants, and Plaintiffs' reasonable reliance thereon, Plaintiffs remained residing and occupying the Subject Property, which contained extensive damage and contamination and posed a significant health risk to Plaintiffs. Plaintiffs justifiably believed no health risk existed based on Defendants affirmative representations, including but not limited microbial contamination from identified and/or unidentified sources. These conditions and the above-described actions of Defendants has caused Plaintiffs significant economic and non-economic damage in an amount according to proof at trial.

### FOURTH CAUSE OF ACTION

#### Negligent Infliction of Emotional Distress

#### (By All Plaintiffs Against Defendants and DOES 1-50)

141.    Plaintiffs re-allege and incorporate herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

142.    Defendants and Plaintiffs had a special landlord/tenant relationship during the period of Plaintiffs' tenancy at the Subject Property.

143.    Defendants knew, or in the exercise of reasonable care should have known, that by failing to maintain the Subject Property, Plaintiffs would be exposed to harmful levels or microbial contamination, including harmful indoor air quality, as alleged herein. Defendants further knew, or in the exercise of reasonable care should have known, that Plaintiffs would suffer physical harm and severe emotional distress upon learning of this exposure.

144.    Despite their knowledge that the Subject Property was deficient and substandard, Defendants' nevertheless – in a willful, wanton, negligent, reckless, unlawful, and careless manner – and in violation of State and other applicable laws, failed to property investigate, inspect, test, maintain, repair, and remediate the Subject Property so as to avoid the foreseeable harm to Plaintiffs.

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

145.    As a result of Plaintiffs' exposure to toxic microbial contamination caused by excessive moisture levels, and dampness on the property, Plaintiffs sought medical evaluations and treatments from their doctor.

146.    Plaintiffs have suffered severe and substantial emotional distress, worry, anxiety, loss of sleep, frustration, and pain and suffering as a result of the exposure to toxic mold, and as a result of the physical and psychological impact such exposure has had on Plaintiffs.

147.    As a direct and proximate result of Defendants' breaches alleged herein, Plaintiffs sustained injury to their health and strength, have suffered severe, substantial, enduring, serious emotional distress, and have incurred medical expenses in the treatment thereof all in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Habitability

### (By All Plaintiffs Against All Defendants and Does 1-50)

148.    Plaintiffs re-allege and incorporate herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

149.    As previously described in this Complaint, Plaintiffs are informed and believe, and based thereon allege, that at all relevant times and/or potions thereof, Defendants were owners, landlord, and/or lessors of the Subject Property and/or authorized agents of the owners, landlords, and/or lessors of the Subject Property and responsible for the proper management, maintenance and/or repair of the Subject Property.

150.    Plaintiffs entered into a written lease with Defendants. Under the rental agreement Plaintiffs paid rent, a security deposit, and other fees and costs.

151.    The rental agreement expressly acknowledges that the residential use of the Subject Property was for Plaintiffs.

152.    Defendants impliedly warranted to Plaintiffs that the Subject Property was habitable.

153.    As described at length within the instant Complaint, Defendants knew or should have known of the chronic moisture, and on the Leased Property which led to the growth of toxic mold and the spread of dangerous microbial contamination.

154.    At the time Plaintiffs took possession and throughout the period Plaintiffs remained on the property, but unbeknownst to Plaintiffs, the Leased Property was uninhabitable and unfit for human occupation due to improper and negligent, careless, and reckless maintenance and repair, all contributing to water and moisture intrusion, causing microbial/mycological contamination and infestation of the Leased Property, rendering the property unsafe for habitation and causing Plaintiffs severe economic and non-economic damage.

155.    Plaintiffs remained unaware of any injury or causation to their continuing chronic health problems until approximately January 2020.

156.    Plaintiffs notified Defendants many times of the defective conditions throughout the period Plaintiffs lived on the property, but Defendants failed to investigate and/or correct, repair and/or remediate the conditions in a timely and proper manner (or at all).

157.    Plaintiffs upheld all of Plaintiffs duties as required under the Lease: for example, Plaintiffs regularly made timely rent payments.

158.    The Subject Property as it existed was uninhabitable and had no rental value whatsoever as it was the source of Plaintiffs' health problems, and directly and proximately caused the economic and non-economic damages Plaintiffs have suffered.

159.    As a proximate result of Defendants breach of the implied warranty of habitability, and failure to repair, maintain, or remediate the conditions on the property, Plaintiffs sustained damage and serious personal injuries, and well as a litany of other economic and non-economic damages as described in this Complaint and in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

**Breach of Implied Covenant of Quiet Use and Enjoyment**

**(By All Plaintiffs Against Defendants and Does 1-50)**

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

160.    Plaintiffs re-allege and incorporate herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

161.    Implied in the lease between Plaintiffs and Defendants. Was an implied covenant of quiet enjoyment by which Defendants', as landlord, impliedly promised Plaintiffs to not create conditions through acts or omissions, which would disturb Plaintiffs' possession and beneficial use and enjoyment of the premises for the purposes contemplated by the rental agreement.

162.    Defendants breached the implied covenant by failing to maintain an appropriately safe and secure living environment and residence which was habitable.

163.    As a proximate and legal result of Defendants' acts and omissions in breaching the implied covenant of quiet enjoyment, Plaintiffs have suffered economic and non-economic damages as described throughout this Complaint in an amount to be determined at trial, but which exceeds the jurisdictionally required minimum.

## SEVENTH CAUSE OF ACTION

### Rent Abatement

### (By All Plaintiffs Against All Defendants and Does 1-50)

164.    Plaintiffs re-allege and incorporate herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

165.    Defendants leased the Subject Property to Plaintiffs by written rental agreement.

166.    Defendants leased the Subject Property to Plaintiffs for use as a residential property.

167.    Plaintiffs took possession of the premises and faithfully and promptly paid their rent and performed all other obligations imposed by the rental agreement.

168.    At the time the rental agreement was entered into, and throughout the period of occupancy of the Subject Property, Defendants knowingly caused and permitted substandard building, design, construction, maintenance, and repairs, as well as hazardous and unhealthy conditions, including microbial/mycological contamination in the Subject Property's living areas; as alleged herein, to exist within and about the Subject Property.

1    169.   Defendants at all relevant times knew of the conditions that existed in violation of

2  numerous provisions of State and Local Housing Codes, including but not limited to the provisions

3  of California Civil Code Section 1941, California State Building Standard Codes, UBC Standards,

4  and OSHA Standards.

5    170.   Despite this knowledge and repeated requests by Plaintiffs for the property to be

6  fixed, Defendants failed to do so, refused to do so, and/or actively concealed issues on the property

7  and made surface-level cosmetic repairs that did not actually fix the issues on the Subject Property

8  in violation of California Civil Code Section 1941, 1941.1, and numerous other state and local

9  laws and regulations.

10    171.   Because of the above-stated conditions, the Subject Property leased by Plaintiffs

11  was unsafe, unhealthy, substandard, untenantable, and uninhabitable. Defendants breached the

12  warranty of habitability and warranty of quiet use and enjoyment to Plaintiffs.

13    172.   Because of these issues, the fair rental value of the residence at all times mentioned

14  in the Complaint was $0.00 per month.

15    173.   Because of the continued existence of these conditions, Plaintiffs were unable to

16  remain in the Subject Property and were forced to vacate.

17    174.   Plaintiffs were completely unable to use the Subject Property due to its

18  uninhabitability as a result of the conditions alleged herein.

19    175.   During the occupancy, Plaintiffs paid a total rent in the sum to be proven at trial on

20  a per month basis. The monthly rent was $3,309.00 per month during the period Plaintiffs resided

21  at the Leased Property.

22    176.   The total fair rental value of the premises during this period was no more than $0.00

23  and therefore Plaintiffs have been damaged in the sum to be proven at trial.

24                              **EIGHTH CAUSE OF ACTION**

25                                    **Gross Negligence**

26              **(By All Plaintiffs Against All Defendants and Does 1-50)**

27

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

---

**COMPLAINT**
- 29 -

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

1      177.    Plaintiffs re-allege and incorporate herein and by reference each and every previous

2  and subsequent allegation as though fully set forth herein.

3      178.    At all relevant times herein, Defendants were owners, managers, and lessors of the

4  Subject Property.

5      179.    Defendant failed to repair or fix dangerous conditions present on the Property, as

6  described throughout this Complaint, to protect Defendants' tenants. Defendant even failed to fix

7  these conditions after Defendant knew or should have known of the dangerous conditions and the

8  presence of mold.

9      180.    Plaintiffs were tenants of Defendants pursuant to the written Lease agreement that

10  both parties executed.

11      181.    Defendants failure to fix the mold problems represents reckless disregard for the

12  probability of harm to the tenants on the Leased Property.

13      182.    Plaintiffs have suffered severe harm as a proximate and legal result of Defendants'

14  failure to maintain, repair, or remediate the issues on the Leased Property.

15      183.    At all relevant times Plaintiffs acted reasonably and fully complied with all

16  Plaintiffs' obligations under the lease agreement.

17      184.    Defendants failure to act despite the fact that Defendants knew or should have

18  known of the dangerous mold problem represents a serious departure from what a reasonable

19  person, property owner, or property manager would do in similar circumstances.

20  **NINTH CAUSE OF ACTION**

21  **Premises Liability**

22  **(By All Plaintiffs Against All Defendants and Does 1-50)**

23      185.    Plaintiffs re-allege and incorporate herein and by reference each and every previous

24  and subsequent allegation as though fully set forth herein.

25      186.    At all relevant times herein, Defendants were owners, managers, and lessors of the

26  Leased Property.

27

28

**COMPLAINT**
- 30 -

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

187.   Defendants failed to repair or fix dangerous conditions present on the Property, as described throughout this Complaint, to protect Defendants' tenants. Defendants even failed to fix these conditions after Defendant knew or should have known of the dangerous conditions and the presence of toxic mold.

188.   Plaintiffs were tenants of Defendants pursuant to the written Lease agreement that both parties executed.

189.   Defendants failure to fix the mold problems represents reckless disregard for the probability of harm to the tenants on the Leased Property.

190.   Plaintiffs have suffered severe harm as a proximate and legal result of Defendants' failure to maintain, repair, or remediate the issues on the Leased Property.

191.   At all relevant times Plaintiffs acted reasonably and fully complied with all Plaintiffs' obligations under the lease agreement.

192.   Defendants failure to act despite the fact that Defendants knew or should have known of the dangerous mold problem represents a serious departure from what a reasonable person, property owner, or property manager would do in similar circumstances.

## TENTH CAUSE OF ACTION

### Fraud- Concealment

### (By All Plaintiffs Against All Defendants and Does 1-50)

193.   Plaintiffs re-allege and incorporate herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

194.   At all relevant times herein, Defendants were owners, managers, and lessors of the Leased Property.

195.   On multiple occasions as described in this Complaint, Defendants represented to Plaintiffs that they would not remediate the suspected mold infestation, and that no mold was on the property.

196.   Specifically, Plaintiffs complained regarding mold in the Leased Property to LINCOLN MILITARY HOUSING'S employees on multiple occasions as described in this Complaint.

197.   Defendants represented to Plaintiffs orally and in writing on multiple occasions that Defendants issues were not caused by mold nor related to mold. Yet, Defendants continually refused to inspect or test for mold.

198.   Instead of adequately testing for mold or fixing the problems causing the mold, Defendants merely ignored the problem, and represented that there was no issue to Plaintiffs. For instance, on or around October 21, 2020, Plaintiffs once again noticed water leaking from underneath the shower on the Leased Property and contacted LINCOLN MILITARY HOUSING regarding the problem. Nico Zander met with Plaintiffs at the Leased Property and represented that the issue was not a water leak, but an issue with the glue that held down the vinyl near the shower. Plaintiffs were suspicious of this claim given the visible water, and the numerous other leaks, mold, and water intrusion issues they had experienced on the property.

199.   The wall of the bathroom where this leak was occurring was previously torn open and despite representations by LINCOLN MILITARY HOUSING that the issue had been fixed, began leaking against just a few days later.

200.   Additionally, on information and belief, LINCOLN MILITARY HOUSING employees, including Mr. Mark Mitchell, continued to make alterations to the Leased Property even after receiving a spoliation letter, and disconnected Plaintiffs' security system in order to do so.

201.   In making the intentional affirmative misrepresentations of material fact as described herein, even if Defendants believed them to be true at the time made, they made such statements and misrepresentations without any reasonable basis for believing them to be true and should have known them to be false. Defendants had no reasonable grounds for believing their representations to Plaintiffs were true at the time they made them.

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

202.    Defendants made the intentional affirmative misrepresentations and statements of material fact about the Leased Property as described herein with the intent to induce Plaintiffs to rely on them and with the intent to induce Plaintiffs to remain residing in the Leased Property and continue to pay monthly rent.

203.    Plaintiffs reasonably and justifiably relied on Defendants misrepresentations to Plaintiffs detriment, injury, and damage.

204.    Plaintiffs did not know of the concealed facts, and Defendants prevented Plaintiffs from conducting further investigations to find a cause or to address the expressed concerns of Plaintiffs.

205.    Had the concealed information been disclosed to Plaintiffs by Defendants, Plaintiffs reasonably would have behaved differently: namely they would have moved away from the Leased Property to avoid exposure to the toxic mold.

206.    As a direct and proximate result of such negligent misrepresentations by Defendants, and Plaintiffs' reasonable reliance thereon, Plaintiffs remained residing and occupying the Subject Property, which contained extensive damage and contamination and posed a significant health risk to Plaintiffs. Plaintiffs justifiably believed no health risk existed for the entirety of eleven months while residing in the Leased Property based on Defendants'' affirmative representations, including but not limited to water leaks, moisture, and microbial contamination from identified and/or unidentified sources. These conditions and the above-described actions of Defendants has caused Plaintiffs significant economic and non-economic damage in an amount according to proof at trial.

## ELEVENTH CAUSE OF ACTION

### Constructive (Wrongful) Eviction

### (By All Plaintiffs Against All Defendants and Does 1-50)

207.    Plaintiffs re-allege and incorporate herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 33 -

208.    As a proximate result of Defendants' failure to maintain the Leased Property in a habitable and tenantable condition that complied with applicable state, federal and local building and housing codes, and Defendants' failure to maintain the Subject Property in a condition fit for human occupation, Defendants breached their covenant of the quiet use and enjoyment to Plaintiffs and Plaintiffs were required and forced to vacate the Subject Property and did so on or about October 28, 2020 constituting a constructive and wrongful eviction.

209.    Defendants' constructive eviction of Plaintiffs on October 28, 2020 entitled Plaintiffs to immediately terminate their tenancy and Plaintiffs' obligations under the rental agreement were extinguished. *See e.g. Green v. Superior Court* (1974) 10 Cal. 3d 616, 639.

210.    As a proximate result of Defendants' conduct, as alleged in this Complaint, Plaintiffs suffered a host of general and specific damages in an amount to be proven at trial (including but not limited to: physical injury, mental anguish, emotional damage, psychological injury, lost wages, lost rent, loss of personal property, pain and suffering, moving expenses, housing costs).

211.    Plaintiffs have been, and continue to be, subject to physical injuries which are seriously damaging their health and destroying their quality of life in an amount not ascertainable at this time but which will be proven at the time of trial.

212.    Defendants acted fraudulently, intentionally, willfully, retaliatorily, oppressively, and willfully with a conscious disregard for Plaintiffs' safety and rights. Such action justifies an award of punitive and exemplary damages under California Civil Code Section 3294.

## TWELFTH CAUSE OF ACTION

### Intentional Infliction of Emotional. Distress

### (By All Plaintiffs Against All Defendants and Does 1-50)

213.    Plaintiffs re-allege and incorporate herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

214.    Defendants and Plaintiffs had a special landlord/tenant relationship during the period of Plaintiffs' tenancy at the Subject Property.

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 34 -

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

215. Defendants knew that by failing to maintain the Subject Property, Plaintiffs would be exposed to harmful levels or microbial contamination, including harmful indoor air quality, as alleged herein. Defendants further knew, or in the exercise of reasonable care should have known, that Plaintiffs would suffer physical harm and severe emotional distress upon learning of this exposure.

216. Despite their knowledge that the Subject Property was deficient and substandard, Defendants' nevertheless – in a willful, wanton, negligent, reckless, unlawful, and careless manner – and in violation of State and other applicable laws, failed to property investigate, inspect, test, maintain, repair, and remediate the Subject Property so as to avoid the foreseeable harm to Plaintiffs.

217. Defendants acted outrageously, with reckless disregard for the probability that Plaintiffs would suffer physical and emotional distress as a result of the condition of the Subject Property, and the subsequent removal from the home.

218. As a result of Plaintiffs' exposure to toxic microbial contamination caused by excessive moisture levels, and dampness on the property, Plaintiffs sought medical evaluations and treatments from their doctor.

219. Plaintiffs have suffered severe and substantial emotional distress, worry, anxiety, loss of sleep, frustration, and pain and suffering as a result of the exposure to toxic mold, and as a result of the physical and psychological impact such exposure has had on Plaintiffs.

220. As a direct and proximate result of Defendants' breaches alleged herein, Plaintiffs sustained injury to their health and strength, have suffered severe, substantial, enduring, serious emotional distress, and have incurred medical expenses in the treatment thereof all in an amount to be proven at trial.

## **PRAYER**

WHEREFORE, Plaintiffs request judgment against Defendants, and each of them, for the following:

1      1.     For general damages in excess of this Court's minimum jurisdiction, according to

2  proof;

3      2.     Actual damages and attorneys fees and costs pursuant to California Civil Code

4  Section 1942.4, and as allowable by law;

5      3.     For special damages according to proof;

6      4.     For prejudgment interest as provided by law;

7      5.     For costs of suit incurred herein;

8      6.     For investigation costs, including *Stearman* damages;

9      7.     For punitive and exemplary damages pursuant to California Civil Code Section

10  3294 and as allowed by law, according to proof;

11      8.     For reasonable attorney fees pursuant to the attorney fee provision contained

12  within the lease agreement at issue in the instant case;

13      9.     For any other and further relief the court considers just and proper.

14

15  Dated: December 15, 2021               **WEBB LAW GROUP, APC**

16

17                             By_____

18                               LENDEN F. WEBB

                                CHRISTIAN B.  CLARK

19                               Attorneys for Plaintiffs

20

21                   **DEMAND FOR JURY TRIAL**

22  Plaintiff demands a trial by jury on all claims so triable.

23  Dated: December 15, 2021       _____

24                          Christian B. Clark for Plaintiffs

25

26

27

28

WEBB LAW GROUP, APC
466 West Fallbrook Avenue, Suite 102
Fresno, California 93711

**COMPLAINT**
- 36 -

# EXHIBIT 1



PARADISE
ENVIRONMENTAL

Testing and Consulting Services

PEACE OF MIND

# Limited Mold Survey/ Mold Testing

Prepared for:     Michael Tipton

Property:         138 Rupertus Dr.
                  San Clemente, CA 92672

paradiseenvironmental@gmail.com
www.paradiseenvironmental.com

7344 Melrose Street
Buena Park, CA  90621

Office:  714-266-0288
Mobile:  714-392-3766



**PARADISE ENVIRONMENTAL**

Testing and Consulting Services

**PEACE OF MIND**

7344 Melrose Street
Buena Park, CA  90621
Office:   714-266-0288
Mobile:  714-392-3766

**DOSH CAC# 11-4709**

# Limited Mold Survey/Testing/Sampling

**November 20, 2020**

Re:     Property at:     138 Rupertus Dr.
                         San Clemente, CA  92672

Enclosed please find the Paradise Environmental mold testing report for the above referenced project. The mold & fungus testing was performed under the direction of Louis Mendoza who is a DOSH Certified Asbestos Consultant (CAC), Certified Indoor Environmentalist (CIE), and Indoor Air Quality (IAQ) project Manager.

The lab results for the total spore trap air samples which were collected during the mold inspection indicated **unacceptable spore count levels and types.  Visible mold growth was discovered. Remediation will be necessary**. Enclosed is a copy of the mold inspection report.

Paradise Environmental appreciates the opportunity to provide environmental services for this important project.  Please do not hesitate to call should there be any questions regarding this mold & fungus inspection report.

Respectfully submitted,

**Paradise Environmental**

**Louis Mendoza, CAC, CIE**
**Owner**
**IAQ Project Manager**



AMERICAN COUNCIL for ACCREDITED CERTIFICATION
LOUIS MENDOZA, JR.
CIE
BOARD CERTIFIED
#1107003
Exp. 7/31/2021
Council-certified Indoor Environmentalist

# Table of Contents

1.   Mold Survey ................................................................................................ 4

   1.1.   Mold and Fungus Sampling Summary ...................................................... 4

      1.1.1.   Project Information................................................................ 4

      1.1.2.   Mold & Fungus Verification Results ...................................... 5

      1.1.3.   Sampling summary ................................................................ 6

   1.2.   Photographs ............................................................................................. 7

   1.3.   Conditions at Location ............................................................................ 14

   1.4.   Remediation Strategy ............................................................................ 15

   1.5.   Certificate .............................................................................................. 16

   1.6.   Methodology .......................................................................................... 18

   1.7.   Results.................................................................................................... 19

   1.8.   Warranty ................................................................................................ 19

   1.9.   References ............................................................................................. 20

Appendix A:  Certification ................................................................................. 21

Appendix B:  COC ............................................................................................. 22

Appendix C:  Lab Report ................................................................................... 24

# 1. Mold Survey

## 1.1.  Mold and Fungus Sampling Summary

### 1.1.1. Project Information

| | |
|---|---|
| **Client:** | Michael Tipton |
| **Address:** | 138 Rupertas Dr.<br>San Clemente, CA  92672 |
| **Project Number:** | M112020 |
| **Prepared For:** | Michael Tipton |
| **Insurance:** | |
| **Contact:** | Michael Tipton |
| **Consultant:** | Paradise Environmental<br>7344 Melrose St.<br>Buena Park, CA 90621 |
| **On-site Representative(s):** | Louis Mendoza |
| **Prepared By:** | Paradise Environmental<br>7344 Melrose St.<br>Buena Park, CA 90621 |
| **On-site Emergency Services<br>  Dry Out Contractor:** | |
| **Project Manager:** | |
| **Project Date(s):** | 11/20/2020 |

Controlled document by Paradise Environmental. All rights reserved.

## 1.1.2. Mold & Fungus Verification Results

| Sample | Type | Location | Spore Types Present | | Total |
|---|---|---|---|---|---|
| M112020-1 | Air-O-Cell | Exterior | Alternaria<br>Ascospores<br>Aspergillus/Penicillium<br>Basidiospores<br>Bipolaris | Cladosporium<br>Epiccoccum<br>Myxomycetes<br>Rust<br>Nigrospora | 11,100* |
| M112020-2 | Air-O-Cell | Hall Bathroom | Alternaria<br>Ascospores<br>Aspergillus/Penicillium<br>Basidiospores | Chaetomium<br>Cladosporium<br>Myxomycetes<br>Stachybotrys | 14,720* |
| M112020-3 | Air-O-Cell | Hallway | Alternaria<br>Ascospores<br>Aspergillus/Penicillium<br>Basidiospores | Chaetomium<br>Cladosporium<br>Myxomycetes<br>Pithomyces | 11,360* |
| M112020-4 | Air-O-Cell | Bedroom 1 | Alternaria<br>Ascospores<br>Aspergillus/Penicillium<br>Basidiospores<br>Bipolaris<br>Chaetomium | Cladosporium<br>Curvularia<br>Ganodema<br>Myxomycetes<br>Stachybotrys/Memnoniella<br>Triadelphia | 8,120* |
| M112020-5 | Air-O-Cell | Entry/Living Rm. | Alternaria<br>Aspergillus/Penicillium<br>Basidiospores<br>Bipolaris<br>Chaetomium<br>Cladosporium | Curvularia<br>Epiccoccum<br>Myxomycetes<br>Rust<br>Torula-like | 6,620* |
| M112020-6 | Air-O-Cell | Laundry room | Alternaria<br>Aspergillus/Penicillium<br>Basidiospores | Chaetomium<br>Cladosporium<br>Myxomycetes | 2,240* |
| M112020-7 | Air-O-Cell | Living room | Alternaria<br>Ascospores<br>Aspergillus/Penicillium<br>Basidiospores<br>Chaetomium | Cladosporium<br>Myxomycetes<br>Stachybotrys/Memnoniella<br>Nigrospora | 3,340* |
| M112020-8 | Lift Tape | Hallway | Aspergillus/Penicillium<br>Chaetomium<br>Stachybotrys/Memnoniella | | >1,000<br>>1,000<br><100 |
| M112020-9 | Lift Tape | Master bathroom vanity | Chaetomium<br>Aspergillus | | <1,000<br>>1,000 |
| M112020-10 | Lift Tape | Laundry Room | Aspergillus/Penicillium<br>Chaetomium | | >1,000<br>>1,000 |
| M112020-11 | Lift Tape | Kitchen Sink | Aspergillus/Penicillium<br>Cladosporium<br>Myxomycetes<br>Scopulaiopsis/Microascus<br>Monodictys | | <100<br><100<br><100<br><1,000<br>>1,000 |
| M112020-12 | Lift Tape | Entry/Bedframe from Master Bedroom | Aspergillus/Penicillium<br>Basidiospores<br>Chaetomium<br>Myxomycetes | | <10<br><10<br><10<br><10 |

*Count/m³ = total spores counted at 400x per cubic meter of air.

**Special Notes**: Indoor samples indicate spore concentrations higher than outside sample. Visible evidence of unresolved water damage and fungal growth was discovered.

Limited Mold Survey
Controlled document by Paradise Environmental. All rights reserved.

Page **5** of **27**

### 1.1.3. Sampling summary

Listed below is a rough sketch of the sampled areas.

Controlled document by Paradise Environmental. All rights reserved.



## 1.2. Photographs
### Photograph No. 1

Verification of calibration prior to testing.



### Photograph No. 2

Spore Trap Air Sample No. M112020-1 collected from the exterior of the structure.



**Photograph No 3.**

Spore Trap Air Sample No. M112020-2 collected from the Hall Bathroom.



**Photograph No 4.**

Spore Trap Air Sample No. M112020-3 collected from the Hallway.



Limited Mold Survey
Controlled document by Paradise Environmental. All rights reserved.

Page **8** of **27**

## Photograph No 5.

Spore Trap Air Sample No. M112020-4 collected from Bedroom-1.



## Photograph No 6.

Spore Trap Air Sample No. M112020-5 collected from the Entry/Living room.



Controlled document by Paradise Environmental. All rights reserved.                    Page **9** of **27**

## Photograph No 7.

Spore Trap Air Sample No. M112020-6 collected from the Laundry room.



## Photograph No 8.

Spore Trap Air Sample No. M112020-7 collected from the Living room.



Limited Mold Survey
Controlled document by Paradise Environmental. All rights reserved.          Page **10** of **27**

### Photograph No 9.

Lift Tape Sample No. M112020-8 collected from the Hallway.



### Photograph No 10.

Lift Tape Sample No. M112020-9 collected from the Master Bathroom vanity.



Limited Mold Survey
Controlled document by Paradise Environmental. All rights reserved.     Page **11** of **27**

## Photograph No 11.

Lift Tape Sample No. M112020-10 collected from the Laundry room.



## Photograph No 12.

Lift Tape Sample No. M112020-11 collected from the Kitchen sink.



Limited Mold Survey
Controlled document by Paradise Environmental. All rights reserved.

## Photograph No 13.

Lift Tape Sample No. M112020-12 collected from the Master Bedroom bedframe.



## 1.3.  Conditions at Location

| Job No. | Date | Weather |
|---------|------|---------|
| M112020 | 11/20/2020 | Clear |

| Location | Outside | Inside |
|----------|---------|--------|
| Temperature | 78° F | 79° F |
| Relative Humidity | 28% | 32% |

**Special Notes:** Below are several photos of the testing performed.


Visual inspection of Hallway (Mold)


Visual inspection Master Bath vanity (Mold)


Visual inspection under Kitchen sink (Mold)


Visual inspection of Laundry room (Mold)

Limited Mold Survey
Controlled document by Paradise Environmental. All rights reserved.

Page **14** of **27**

## 1.4.  Remediation Strategy

- ➢ Identify and repair any source of water intrusion. No treatment or build back should begin until source of water has be remedied.
- ➢ Set up localized containment of the hallway, laundry, and kitchen.
- ➢ Proper PPE should be utilized by the remediation contractor as per guidelines of the IICRC for mold restoration procedures.

### Hallway

- ➢ Remove additional mold and/or moisture affected drywall which remains from apparent initial remedial efforts and continue removing 2' beyond visible mold and moisture to verify the extent as per IICRC guidelines. This will require removing additional drywall in hallway on other side of Hallway bathroom (around the corner from where drywall was initially removed).
- ➢ All exposed wood shall be sanded/grinded and/or wire brushed until a visually clean surface is achieved.
- ➢ Wet wipe framing with Sporicidin (or equivalent)

### Master bathroom

- ➢ The affected Master Bathroom vanity should be discarded. It has been damaged by water and is hosting fungal growth. The sink and top may be cleaned and retained if desired.

### Kitchen

- ➢ The sink in the kitchen should be removed as well as any affected tile, after which, the remedial contractor shall observe the integrity of the plywood substrate and replace accordingly.
- ➢ Cavities/drywall layers and carefully evaluate for growth into adjacent areas.
- ➢ Any exposed wood shall be sanded/grinded and/or wire brushed until a visually clean surface is achieved.
- ➢ Wet wipe framing with Sporicidin (or equivalent)

### All areas of home

- ➢ Due to significant sporulation of fungi throughout home "Air Scrubbers" should be installed in each contained area and room for a minimum 24 hours to help clean air of residual spores.
- ➢ All areas of home (walls, floors, ceilings, non-porous belongings, and large porous surfaces, i.e. mattresses) should be thoroughly HEPA vacuumed to removed spores.
- ➢ Clothing and bedding should be thoroughly cleaned.
- ➢ A post remedial test can be performed after the above steps and a minimum of 24 hours of air scrubbing is accomplished.

Limited Mold Survey
Controlled document by Paradise Environmental. All rights reserved.

Tipton 6738

## 1.5.  Certificate

Certificate will be on the following page



**PARADISE
ENVIRONMENTAL**

# Certificate of Inspection

### The testing performed at:
### 138 Rupertus Dr.
### San Clemente, CA 92672
### <u>FAILS</u> the Mold Testing Procedures at Paradise Environmental

**Findings during inspection:**

*Moisture*

> ✖ This location was inspected with a Protimeter BLD 5365 moisture meter and found to have elevated readings which may support microbial growth.

*Visual Inspection*

> ✖ This location was inspected and found to have visible evidence of unresolved water damage and fungal growth which is unacceptable.

*Air Sampling*

> ✖ This location was tested using Air-O-Cell sampling media and found to have mold spore counts higher than the outdoor ambient air which is unacceptable.

*Final Determination*

> ✖ This location does require further remediation and/or destructive investigations/testing based on the above findings.

**Contractor Name:**
**Project Number: M112020**
**Inspector Name: Louis Mendoza**
**Inspection Date: November 20, 2020**
**Inspector Signature:**



AMERICAN COUNCIL for ACCREDITED CERTIFICATION
LOUIS MENDOZA, JR.
**CfE**
BOARD CERTIFIED
#1107003
Exp. 7/31/2021
Council-certified Indoor Environmentalist

paradiseenvironmental@gmail.com
www.paradiseenvironmental.com

7344 Melrose Street
Buena Park, CA  90621

Office:  714-266-0288
Mobile:  714-392-3766

## 1.6.  Methodology

### Inspection procedures

The mold & fungus testing was performed under the direction of Mr. Louis Mendoza. Prior to the air sampling, the inspector performs a visual inspection of the area. The focus of the visual inspection is to identify suspect areas and to identify visual mold or conditions which favor growth.

### Effects of weather

Rain has the ability to wash the air clean of many spore types while it may assist the dispersion of others. Sampling on rainy or very humid days may result in outdoor counts which are abnormally low or which have a significantly different distribution of spore types.

### Assessment of Ambient Air conditions

During the visual inspection, a Paradise Environmental inspector evaluated and assessed the extent of the microbial contamination using the conditions established by the IICRC in their S520 Standard and Reference Guide for Professional Remediation. The IICRC classifies the ambient air in an indoor environment under the following three conditions.

*Condition 1* (**Normal Fungal Ecology**): An indoor environment that may have settled spores, fungal fragments or traces of actual growth whose identity; location and quantity are reflective of a normal fungal ecology for a similar indoor environment.

*Condition 2* (**Settled Spores**):  An indoor environment which is primarily contaminated with settled spores that were dispersed directly or indirectly from a Condition 3 area, and which may have traces of actual growth.

*Condition 3 (***Actual Growth**):  An indoor environment contaminated with the presence of actual mold growth and associated spores. Actual growth includes growth that is active or dormant, visible or hidden.

### Air Sampling Procedures

The mold & fungus verification sampling/testing procedures used by Paradise Environmental was based on the guidelines established by the IICRC in their IICRC S520 Standard and Reference Guide for Professional Mold Remediation, and by the guidelines established by the American Conference of Governmental Industrial Hygienists (ACGIH) in their Bioaerosols Assessment and Control textbook.

For the purpose of this mold inspection testing, a total of seven spore traps (non-viable) air samples were collected. Six of the spore trap air samples were collected from inside of the structure and one air sample was collected outside of the structure.  These tests allow for a comparison of the total airborne spore concentrations present inside of the structure to the total airborne spore concentrations present outside of the structure.

The air samples were labeled and sent under chain-of-custody to the laboratory for analysis. Total spore sampling is performed to compare outdoor and indoor spore counts and genera. Indoor samples are generally collected in suspect impacted areas, and/or adjacent areas. Non-viable total spore trap air samples were collected using Air-O-Cell slit impaction cassettes with a variable flow pump, sampling pump. The sampling pumps are set at a flow rate of 15 LPM. The pump was calibrated by a field rotameter, and/or sent in to manufacturer for professional calibration and inspection. Flow rate was checked prior to and after sampling. The nature of this sampling methodology is that the samples should not be run for duration longer than ten minutes. Paradise Environmental has adopted a policy of a five-minute sampling period as a routine practice.

**Laboratory Methodology**

The total spore trap air samples are mounted on slides and then analyzed via light microscopy. The mycologists visually estimated the relative amounts of each constituent by determining the volume of each constituent in proportion to the volume of each constituent in proportion to the total volume of the sample, using a stereoscope. These sample results can be found in the Analytical Results section of this report.

## 1.7. Results

**Laboratory Data Interpretive Guidelines**

These comparisons are used for investigative purposes when evaluating the total indoor spore counts as compared to the total outdoor spore counts:

> ➢ Compare the total spore concentrations from outside of the building to the concentrations in a specific area within the building. If the indoor concentrations are higher than those collected from the outside, the samples are considered suspect for indoor mold growth.

> ➢ Compare the types of mold present in the outside environment to the types of molds present in the indoor environment. The greater the variation in spore types present inside versus outside makes it more likely that indoor mold growth is present.

> ➢ Compare types and amounts of "Water Damage" associated molds.

**Mold Testing Results**

The area is inspected to determine suspect areas.  The analytical results of the mold testing spore trap air samples revealed that the total airborne spore concentrations present inside the unit were currently unacceptable when compared to the total airborne spore concentrations present outside of the structure. Additionally, based on the visual inspection, unacceptable conditions were found. The area does require remediation.

## 1.8. Warranty

Paradise Environmental, warrants that the findings contained herein have been promulgated in general accordance with accepted professional practices at the time of its preparation as applied by professionals in the community. Changes in the state of the art or in applicable regulations cannot be anticipated and have not been addressed in this report.

The field and laboratory results reported herein are considered sufficient in detail and scope to determine the presence, condition and hazard potential of accessible and/or visible mold growth at the time of inspection. Test results are valid only for the areas sampled.

It is impossible to eliminate all of the mold spores within an indoor environment, due to the fact that molds can be found almost everywhere and have the ability to grow on virtually an organic substance as long as there is moisture and oxygen present. As a result of molds ability to grow on any organic substance, there is a possibility that conditions may exist which could not be identified within the scope of this survey or which were not apparent during the site visit. Therefore, if the source of the water intrusion and areas that were impacted by the water intrusion are not remediated, Paradise Environmental cannot guarantee that mold will not ever occur.

This inspection covered only those areas, which were exposed and/or physically accessible to the inspector as outlined by the scope of work. The study is also limited to the information available from the client at the time it was conducted.

No other warranties are implied or expressed.

## 1.9. References

American Conference of Governmental Industrial Hygienists (ACGIH). *Bioaerosols: Assessment and Control.* Macher, J., editor. ACHIH. Cincinnati, OH 1999

Institute of Inspection, Cleaning and Restoration Certification.
*IICRC S520 Standard and Reference Guide for Professional Mold Remediation*, First Edition. December 2003

United States Environmental Protection Agency. *Mold Remediation in Schools and Commercial Buildings.* U.S. EPA Washington, DC June 2001

United States Department of Housing and Urban Development. *Guidelines for the Evaluation and Control of Lead Based Paint Hazards in Housing*, June 1995

New York City Department of Health, Bureau of Environmental & Occupational Disease Epidemiology. *Guidelines on Assessment and Remediation of Fungi in Indoor Environments.* 2000

# Appendix A: Certification

### Certified Indoor Environmentalist (CIE)



**American Council for
Accredited Certification**

hereby certifies that

Louis Mendoza, Jr.

has met all the specific standards and qualifications of the re-certification process,
including continued professional development, and is hereby re-certified as a

# CIE

Council-certified
Indoor Environmentalist

This certificate expires on July 31, 2021.

Charles F. Wiles, Executive Director          1107003
                                              Certificate Number

This certificate remains the property of the American Council for Accredited Certification.

### Certified Asbestos Consultant (CAC)
### DOSH Certification by State of California



# Appendix B:  COC



**Microbiology Chain of Custody**
LA Testing Order Number (*Lab Use Only*):

**#322021267**

LA TESTING
520 MISSION STREET
SOUTH PASADENA, CA 91030
PHONE: (800) 303-0047
FAX: (323) 254-9982

| | |
|---|---|
| Company Name: Paradise Environmental | LA Testing-Bill to: ☑ Same ☐ Different |
| Street: 7344 Melrose St. | If Bill to is Different note instructions in Comments |
| City: Buena Park    State/Province: CA | *Third Party Billing requires written authorization from third party.* |
| Report To (Name): Timothy Nishio | Zip/Postal Code:    Country: |
| | Telephone #: |
| Email Address: paradiseenvironmental@gmail.com | Fax #:    Purchase Order: |

Project Name/Number: M112020 , Rupertus Dr.   Please Provide Results: ☐ Fax  ☑ Email
U.S. State Samples Taken: CA    Project Zip Code: 92672   Connecticut Samples: ☐ Commercial  ☑ Residential
Sterile, Sodium Thiosulfate Preserved Bottle Used: ☐ Biocide Used in Source (specify): ☐
Public Water Supply Samples: ☐ Note: All results will automatically be reported to DOH if required by state.

**Turnaround Time (TAT) Options - Please Check**

| ☐ 3 Hour | ☑ 6 Hour | ☐ 24 Hour | ☐ 48 Hour | ☐ 72 Hour | ☐ 96 Hour | ☐ 1 Week | ☐ 2 Week |
|---|---|---|---|---|---|---|---|

**Microbiology Test Codes**

| | | |
|---|---|---|
| M001 Air-O-Cell | M174 MoldSnap | M012 *Pseudomonas aeruginosa* (P/A***) |
| M030 Micro 5 | M032 Allergenxu-D | M024 *Pseudomonas aeruginosa* (MFT*) |
| M041 Fungal Direct Examination | | M016 Heterotrophic Plate Count |
| N169 Pollen ID & Enumeration | | M017 Total Coliform & *E. coli* (Collert P/A***) |
| N280 Dust Characterization Level-1 | | M018 Total Coliform & *E. coli* (MFT*) |
| N281 Dust Characterization Level-2 | | M114 Total Coliform & *E. coli* Enumeration |
| M005 Viable Fungi- Air Samples (Genus ID & Count) | | (Collert MPN**) |
| M006 Viable Fungi- Air Samples (Includes *Penicillium*, | | M019 Fecal Coliform (MFT*) |
| *Aspergillus, Cladosporium, Stachybotrys* Species ID & | | M020 Fecal *Streptococcus* (MFT*) |
| Count) | | M029 *Enterococci* (MFT*) |
| M007 Culturable fungi - Surface Samples (Genus ID & | | M129 *Enterococci* (Enterolert P/A***) |
| Count) | | M180 Real Time qPCR-ERMI 36 Panel |
| M008 Culturable fungi - Surface Samples (Includes | | M025 Sewage Screen –Water (MFT*) |
| *Penicillium, Aspergillus, Cladosporium, Stachybotrys* | | |
| Species ID & Count) | | |
| M009 Bacteria Culture Gram Stain & Count | | |
| M010 Bacteria Count & ID - 3 Most Prominent | | |
| M011 Bacteria Count & ID - 5 Most Prominent | | |

| |
|---|
| M115 Sewage Screen - Water (P/A***) |
| M116 Sewage Screen - Water (MPN**) |
| M117 Sewage Screen - Swab (P/A***) |
| M013 Sewage Screen - Swab (MFT*) |
| M133 Methicillin-resistant Staph. aureus (MRSA) |
| M031 Rapid-growing non-TB Mycobacteria Detection & Enumeration |
| M014 Endotoxin Analysis |
| M044 Group Allergen (Cat, Dog, Cockroach, Dust Mite) |
| Other  See Analytical Price Guide |
| Legionella Analysis Please use LA Testing Legionella COC |

*MFT= Membrane Filtration Technique
**MPN= Most Probable Number
***P/A= Presence/Absence

Name of Sampler:    Signature of Sampler:

| Sample # | Sample Location/Description | Sample Type | Potable/ NonPotable (Only for Waters) | Test Code | Volume/ Area | Date/Time Collected | Temperature (°C) (Lab Use Only) |
|---|---|---|---|---|---|---|---|
| Example A1 | Kitchen Sink/Tap | Water | ☒ P  ☐ NP | M017 | 100 mL | 9/1/13 4:00 PM | |
| M112020-1 | Exterior | Air | ☐ P  ☐ NP | M001 | 75 l | 11/20 12:00 | |
| M112020-2 | Hall Bath | Air | ☐ P  ☐ NP | M001 | 75 L | 11/20 12:00 | |
| M112020-3 | Hallway | Air | ☐ P  ☐ NP | M001 | 75 l | 11/20 11 AM | |
| M112020-4 | Bedroom-1 | Air | ☐ P  ☐ NP | M001 | 75 L | 11/20 11:22 | |
| M112020-5 | Entry/living Rm | Air | ☐ P  ☐ NP | M001 | 75 L | 11/20 11:35 | |

| | |
|---|---|
| Client Sample # (s): | Total # of Samples: |

Samples Received Chilled?   Yes / No
(Lab Use Only)

| | | |
|---|---|---|
| Relinquished (Client): | Date: | Time: |
| Received (Lab): | Date: 11/20/20 | Time: 3:30pm |

Comments/Special Instructions:

Page 1 of

EMSL Analytical, Inc.'s (DBA: LA Testing) Laboratory Terms and Conditions are incorporated into this chain of custody by reference in their entirety. Submission of samples to LA Testing constitutes acceptance and acknowledgment of all terms and conditions by Customer.

Controlled Document – COC-33 Micro R6 12/01/2017



**Microbiology Chain of Custody**

**LA Testing Order Number** (*Lab Use Only*):

#322021267

LA TESTING
520 MISSION STREET
SOUTH PASADENA, CA 91030
PHONE: (800) 303-0047
FAX: (323) 254-9982

*Additional pages of the chain of custody are only necessary if needed for additional sample information.*

| Sample # | Sample Location/Description | Sample Type | Potable/ NonPotable (Only for Waters) | Test Code | Volume/ Area | Date/Time Collected | Temperature (°C) (Lab Use Only) |
|---|---|---|---|---|---|---|---|
| M112020-6 | Laundry Room | Air | ☐P ☐NP | mool | 75 L | 11/20/20 | |
| M112020-7 | Living Room | Air | ☐P ☐NP | mool | 75 L | 11/20/20 | |
| M112020-8 | Hallway | Lift Tape | ☐P ☐NP | mo4l | | 11/20/20 | |
| M112020-9 | Master Bedroom Vanity | Lift Tape | ☐P ☐NP | mo4l | | 11/20/20 | |
| M112020-10 | Laundry room | Lift Tape | ☐P ☐NP | mo4l | | 11/20/20 | |
| M112020-11 | Kitchen Sink | Lift Tape | ☐P ☐NP | mo4l | | 11/20/20 | |
| M112020-12 | Bedroom Furniture | Lift Tape | ☐P ☐NP | mo4l | | 11/20/20 | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |

**Comments/Special Instructions:**

Page 2 of 2

EMSL Analytical, Inc.'s (DBA: LA Testing) Laboratory Terms and Conditions are incorporated into this chain of custody by reference in their entirety. Submission of samples to LA Testing constitutes acceptance and acknowledgment of all terms and conditions by Customer.

Controlled Document – COC-33 Micro R6 12/01/2017

Limited Mold Survey
Controlled document by Paradise Environmental. All rights reserved.

Page **23** of **27**

# Appendix C:  Lab Report



**LA Testing.**
520 Mission Street South Pasadena, CA 91030
Tel/Fax: (323) 254-9960 / (323) 254-9982
http://www.LATesting.com / pasadenalab@latesting.com

| | |
|---|---|
| EMSL Order: | 322021267 |
| Customer ID: | PARE25 |
| Customer PO: | |
| Project ID: | |

| | | | |
|---|---|---|---|
| Attention: | Paradise Environmental | Phone: | (714) 392-3766 |
| | Paradise Environmental | Fax: | |
| | 7344 Melrose St. | Collected Date: | 11/20/2020 |
| | Buena Park, CA 90621 | Received Date: | 11/20/2020 03:30 PM |
| | | Analyzed Date: | 11/23/2020 |
| Project: | M112020 Rupertus Dr. | | |

**Test Report:Air-O-Cell(™) Analysis of Fungal Spores & Particulates by Optical Microscopy (Methods MICRO-SOP-201, ASTM D7391)**

| Lab Sample Number: | 322021267-0001 | | | 322021267-0002 | | | 322021267-0003 | | |
|---|---|---|---|---|---|---|---|---|---|
| Client Sample ID: | M112020-1 | | | M112020-2 | | | M112020-3 | | |
| Volume (L): | 75 | | | 75 | | | 75 | | |
| Sample Location: | Exterior | | | Hall bath | | | Halfway | | |
| Spore Types | Raw Count | Count/M³ | % of Total | Raw Count | Count/M³ | % of Total | Raw Count | Count/M³ | % of Total |
| Alternaria (Ulocladium) | 6 | 300 | 2.7 | - | 80 | 0.5 | 1 | 50 | 0.7 |
| Ascospores | 7 | 300 | 2.7 | 3 | 100 | 0.7 | 5 | 200 | 1.8 |
| Aspergillus/Penicillium | 30 | 1300 | 11.7 | 303 | 12800 | 87 | 218 | 9120 | 80.3 |
| Basidiospores | 24 | 1000 | 9 | 8 | 300 | 2 | 8 | 300 | 2.6 |
| Bipolaris++ | 4 | 200 | 1.8 | - | - | - | 8 | 300 | 2.6 |
| Chaetomium | - | - | - | 2 | 80 | 0.5 | 8 | 300 | 2.6 |
| Cladosporium | 144 | 6080 | 54.8 | 29 | 1200 | 8.2 | 21 | 880 | 7.8 |
| Curvularia | - | - | - | - | - | - | - | - | - |
| Epicoccum | 2 | 80 | 0.7 | - | - | - | - | - | - |
| Fusarium | - | - | - | - | - | - | - | - | - |
| Ganoderma | - | - | - | - | - | - | - | - | - |
| Myxomycetes++ | 3 | 100 | 0.9 | 2 | 80 | 0.5 | 1* | 10* | 0.1 |
| Pithomyces++ | - | - | - | - | - | - | 1 | 40 | 0.4 |
| Rust | 1 | 40 | 0.4 | - | - | - | - | - | - |
| Scopulariopsis/Microascus | - | - | - | - | - | - | - | - | - |
| Stachybotrys/Memnoniella | - | - | - | 2 | 80 | 0.5 | 10 | 420 | 3.7 |
| Unidentifiable Spores | - | - | - | - | - | - | - | - | - |
| Zygomycetes | - | - | - | - | - | - | - | - | - |
| Nigrospora | 41 | 1700 | 15.3 | - | - | - | - | - | - |
| Torula-like | - | - | - | - | - | - | - | - | - |
| Trichophila | - | - | - | - | - | - | - | - | - |
| Total Fungi | 262 | 11100 | 100 | 351 | 14720 | 100 | 268 | 11360 | 100 |
| Hyphal Fragment | 27 | 1100 | - | 31 | 1300 | - | 15 | 630 | - |
| Insect Fragment | 2 | 80 | - | - | - | - | 1 | 40 | - |
| Pollen | - | - | - | 2 | 80 | - | 1 | 40 | - |
| Analyt. Sensitivity 600x | 42 | | | 42 | | | 42 | | |
| Analyt. Sensitivity 300x | 13 | | | 13 | | | 3 | | |
| Skin Fragments (1-4) | 1 | | | - | | | 3 | | |
| Fibrous Particulate (1-4) | 1 | | | - | | | - | | |
| Background (1-5) | 3 | | | 4 | | | 3 | | |

++ Includes other spores with similar morphology; see EMSL's fungal glossary for each specific category.

No discernable field blank was submitted with this group of samples.

*Regina Norman* (signature)

Regina Norman, Laboratory Manager
or other Approved Signatory

LA Testing maintains liability limited to cost of analysis. Interpretation and use of test results are the responsibility of the client. This report relates only to the samples reported above, and may not be reproduced, except in full, without written approval by LA Testing. LA Testing bears no responsibility for sample collection activities or analytical method limitations. The report reflects the samples as received. Results are generated from the field sampling data (sampling volumes and areas, locations, etc.) provided by the client on the Chain of Custody. Samples are within quality control criteria and met method specifications unless otherwise noted. High levels of background particulate can obscure spores and other particulates, leading to underestimation. Background levels of 5 indicate an overloading of background particulates, prohibiting accurate detection and quantification. Present = Spores detected on overloaded samples. Results are not blank corrected unless otherwise noted. The detection limit is equal to one fungal spore, structure, pollen, fiber particle or insect fragment. *** Denotes particles found at 300X. "-" Denotes not detected. Due to method clipping rules, raw counts in excess of 100 are extrapolated based on the percentage analyzed.
Samples analyzed by LA Testing South Pasadena, CA AIHA-LAP, LLC–EMLAP Accredited #102314

Initial report from: 11/23/2020 11:11 AM

For information on the fungi listed in this report, please visit the Resources section at www.emsl.com

MIC_M001_0002_0002  Printed: 11/23/2020 11:12 AM

Limited Mold Survey
Controlled document by Paradise Environmental. All rights reserved.



**LA Testing**
520 Mission Street South Pasadena, CA  91030
Tel/Fax: (323) 254-9960 / (323) 254-9982
http://www.LATesting.com / pasadenalab@latesting.com

| EMSL Order: | 322021267 |
|---|---|
| Customer ID: | PARE25 |
| Customer PO: | |
| Project ID: | |

| Attention: | Paradise Environmental | Phone: | (714) 392-3766 |
|---|---|---|---|
| | Paradise Environmental | Fax: | |
| | 7344 Melrose St. | Collected Date: | 11/20/2020 |
| | Buena Park, CA  90621 | Received Date: | 11/20/2020 03:30 PM |
| | | Analyzed Date: | 11/23/2020 |
| Project: | M112020 Rupertus Dr. | | |

**Test Report: Air-O-Cell(™) Analysis of Fungal Spores & Particulates by Optical Microscopy (Methods MICRO-SOP-201, ASTM D7391)**

| Lab Sample Number: | 322021267-0004 | | | 322021267-0005 | | | 322021267-0006 | | |
|---|---|---|---|---|---|---|---|---|---|
| Client Sample ID: | M112020-4 | | | M112020-5 | | | M112020-6 | | |
| Volume (L): | 75 | | | 75 | | | 75 | | |
| Sample Location: | Bedroom-1 | | | Entry/living Rm | | | Laundry room | | |
| Spore Types | Raw Count | Count/M³ | % of Total | Raw Count | Count/M³ | % of Total | Raw Count | Count/M³ | % of Total |
| Alternaria (Ulocladium) | 23 | 970 | 11.9 | 38 | 1600 | 24.2 | - | 80 | 3.6 |
| Ascospores | 3 | 100 | 1.2 | - | - | - | - | - | - |
| Aspergillus/Penicillium | 61 | 2600 | 32 | 75 | 3200 | 48.3 | 26 | 1100 | 49.1 |
| Basidiospores | 12 | 510 | 6.3 | 7 | 300 | 4.5 | 6 | 300 | 13.4 |
| Bipolaris++ | 2 | 80 | - | 1 | 40 | 0.6 | - | - | - |
| Chaetomium | 7 | 300 | 3.7 | 1 | 40 | 0.6 | 7 | 300 | 13.4 |
| Cladosporium | 74 | 3100 | 38.2 | 29 | 1200 | 18.1 | 10 | 420 | 18.8 |
| Curvularia | 1 | 40 | 0.5 | 1 | 40 | 0.6 | - | - | - |
| Epicoccum | - | - | - | 1 | 40 | 0.6 | - | - | - |
| Fusarium | - | - | - | - | - | - | - | - | - |
| Ganoderma | 1 | 40 | 0.5 | - | - | - | - | - | - |
| Myxomycetes++ | 8 | 300 | 3.7 | 2 | 80 | 1.2 | 1 | 40 | 1.8 |
| Pithomyces++ | - | - | - | - | - | - | - | - | - |
| Rust | - | - | - | 1 | 40 | 0.6 | - | - | - |
| Scopulariopsis/Microascus | - | - | - | - | - | - | - | - | - |
| Stachybotrys/Memnoniella | 1 | 40 | 0.5 | - | - | - | - | - | - |
| Unidentifiable Spores | - | - | - | - | - | - | - | - | - |
| Zygomycetes | - | - | - | - | - | - | - | - | - |
| Nigrospora | - | - | - | - | - | - | - | - | - |
| Torula-like | - | - | - | 1 | 40 | 0.6 | - | - | - |
| Tritirachia | 1 | 40 | 0.5 | - | - | - | - | - | - |
| Total Fungi | 194 | 8120 | 100 | 157 | 6620 | 100 | 52 | 2240 | 100 |
| Hyphal Fragment | 23 | 970 | - | 17 | 720 | - | 7 | 300 | - |
| Insect Fragment | 3 | 100 | - | 2 | 80 | - | 1 | 40 | - |
| Pollen | 3 | 100 | - | 4 | 200 | - | - | 80 | - |
| Analyt. Sensitivity 600x | - | 42 | - | | 42 | | | 42 | |
| Analyt. Sensitivity 300x | | 13 | | | 13 | | | 13 | |
| Skin Fragments (1-4) | | 2 | | | 3 | | | 1 | |
| Fibrous Particulate (1-4) | | 1 | | | - | | | 1 | |
| Background (1-5) | | 2 | | | 3 | | | 4 | |

++ Includes other spores with similar morphology; see EMSL's fungal glossary for each specific category.

No discernable field blank was submitted with this group of samples.

*Regina Norman*

Regina Norman, Laboratory Manager
or other Approved Signatory

LA Testing maintains liability limited to cost of analysis. Interpretation and use of test results are the responsibility of the client. This report relates only to the samples reported above, and may not be reproduced, except in full, without written approval by LA Testing. LA Testing bears no responsibility for sample collection activities or analytical method limitations. The report reflects the samples as received. Results are generated from the field sampling data (sampling volumes and areas, locations, etc.) provided by the client on the Chain of Custody. Samples are within quality control criteria and met method certifications unless otherwise noted. High levels of background particulate can obscure spores and other particulates, leading to underestimation. Background levels of 5 indicate an overloading of background particulates, prohibiting accurate detection and quantification. Present = Spores detected on overloaded samples. Results are not inferior corrected unless otherwise noted. The detection limit is equal to one fungal spore, structure, pollen, fiber particle or insect fragment. ** Denotes particles found at 300X. ↗ Denotes not detected. Due to method stopping rules, raw counts in excess of 100 are extrapolated based on the percentage analyzed.

Samples analyzed by LA Testing South Pasadena, CA ASHHA-LAP, LLC—EMLAP Accredited #102514

Initial report from: 11/23/2020 11:11 AM

For information on the fungi listed in this report, please visit the Resources section at www.emsl.com

MIC_M001_0002_0002  Printed: 11/23/2020 11:12 AM

Limited Mold Survey
Controlled document by Paradise Environmental. All rights reserved.



**LA Testing**
520 Mission Street South Pasadena, CA 91030
Tel/Fax (323) 254-9960 / (323) 254-9982
http://www.LATesting.com / pasadenalab@latesting.com

| EMSL Order: | 322021267 |
|---|---|
| Customer ID: | PARE25 |
| Customer PO: | |
| Project ID: | |

Attention: Paradise Environmental
Paradise Environmental
7344 Melrose St.
Buena Park, CA 90621

Phone: (714) 392-3766
Fax:
Collected Date: 11/20/2020
Received Date: 11/20/2020 03:30 PM
Analyzed Date: 11/23/2020

Project: M112020 Rupertus Dr.

**Test Report:Air-O-Cell(™) Analysis of Fungal Spores & Particulates by Optical Microscopy (Methods MICRO-SOP-201, ASTM D7391)**

| Lab Sample Number: | 322021267-0007 | | | | | | |
|---|---|---|---|---|---|---|---|
| Client Sample ID: | M112020-7 | | | | | | |
| Volume (L): | 75 | | | | | | |
| Sample Location: | Living room | | | | | | |
| **Spore Types** | Raw Count | Count/M³ | % of Total | - | - | - | - |
| Alternaria (Ulocladium) | 8 | 300 | 9 | | | | |
| Ascospores | 1 | 40 | 1.2 | | | | |
| Aspergillus/Penicillium | 18 | 760 | 22.8 | | | | |
| Basidiospores | 9 | 400 | 12 | | | | |
| Bipolaris++ | | | | | | | |
| Chaetomium | 1 | 40 | 1.2 | | | | |
| Cladosporium | 39 | 1600 | 47.9 | | | | |
| Curvularia | | | | | | | |
| Epicoccum | | | | | | | |
| Fusarium | | | | | | | |
| Ganoderma | | | | | | | |
| Myxomycetes++ | 2 | 80 | 2.4 | | | | |
| Pithomyces++ | | | | | | | |
| Rust | | | | | | | |
| Scopulariopsis/Microascus | | | | | | | |
| Stachybotrys/Memnoniella | 1 | 40 | 1.2 | | | | |
| Unidentifiable Spores | | | | | | | |
| Zygomycetes | | | | | | | |
| Nigrospora | 2 | 80 | 2.4 | | | | |
| Torula-like | | | | | | | |
| Tritirachia | | | | | | | |
| **Total Fungi** | 81 | 3340 | 100 | | | | |
| Hyphal Fragment | 29 | 1200 | | | | | |
| Insect Fragment | | | | | | | |
| Pollen | | | | | | | |
| Analyt. Sensitivity 600x | | 42 | | | | | |
| Analyt. Sensitivity 300x | | 131 | | | | | |
| Skin Fragments (1-4) | | 2 | | | | | |
| Fibrous Particulate (1-4) | | 1 | | | | | |
| Background (1-5) | | 2 | | | | | |

++ Includes other spores with similar morphology; see EMSL's fungal glossary for each specific category.

No discernable field blank was submitted with this group of samples.

*Regina Norman* (signature)

Regina Norman, Laboratory Manager
or other Approved Signatory

LA Testing maintains liability limited to cost of analysis. Interpretation and use of test results are the responsibility of the client. This report relates only to the samples reported above, and may not be reproduced, except in full, without written approval by LA Testing. LA Testing bears no responsibility for sample collection activities or analytical method limitations. The report reflects the samples as received. Results are generated from the field sampling data (sampling volumes and areas, locations, etc.) provided by the client on the Chain of Custody. Samples are within quality control criteria and met method specifications unless otherwise noted. High levels of background particulate can obscure spores and other particulates, leading to underestimation. Background levels of 5 indicate an overloading of background particulates, prohibiting accurate detection and quantification. Present = Spores detected on overloaded samples. Results are not blank corrected unless otherwise noted. The detection limit is equal to one fungal spore, structure, pollen, fiber particle or insect fragment. *** Denotes particles found at 300X. "-" Denotes not detected. Due to method clipping rates, raw counts in excess of 400 are extrapolated based on the percentage analyzed.

Samples analyzed by LA Testing South Pasadena, CA ASHI-LAP, LLC-EMLAP Accredited #192914

Initial report from: 11/23/2020 11:11 AM

For information on the fungi listed in this report, please visit the Resources section at www.emsl.com

MIC_M001_0002_0002  Printed: 11/23/2020 11:12 AM

Page 3 of 3

Limited Mold Survey
Controlled document by Paradise Environmental. All rights reserved.



**LA Testing**
520 Mission Street South Pasadena, CA 91030
Tel/Fax: (323) 254-9960 / (323) 254-9982
http://www.LATesting.com / pasadenalab@latesting.com

EMSL Order: 322021267
Customer ID: PARE25
Customer PO:
Project ID:

Attention: Paradise Environmental
Paradise Environmental
7344 Melrose St.
Buena Park, CA 90621

Phone: (714) 392-3766
Fax:
Collected Date: 11/20/2020
Received Date: 11/20/2020
Analyzed Date: 11/23/2020

Project: M112020 Rupertus Dr.

### Test Report: Microscopic Examination of Fungal Spores, Fungal Structures, Hyphae, and Other Particulates from Tape Samples (EMSL Method MICRO-SOP-200)

| Lab Sample Number:<br>Client Sample ID:<br>Sample Location: | 322021267-0008<br>M112020-8<br>Hallway | 322021267-0009<br>M112020-9<br>Master bedroom vanity | 322021267-0010<br>M112020-10<br>Laundry room | 322021267-0011<br>M112020-11<br>Kitchen sink | 322021267-0012<br>M112020-12<br>Bedroom furniture |
|---|---|---|---|---|---|
| **Spore Types** | Category | Category | Category | Category | Category |
| Alternaria (Ulocladium) | - | - | - | | - |
| Ascospores | | | | | |
| Aspergillus/Penicillium | High | - | High | Low | Rare |
| Basidiospores | | | | | Rare |
| Bipolaris++ | - | | | | |
| Chaetomium | *High* | Medium | *High* | | Rare |
| Cladosporium | | | | Low | |
| Curvularia | | | | | |
| Epicoccum | | | | - | |
| Fusarium | | | | | |
| Ganoderma | | | | | |
| Myxomycetes++ | | | | Low | Rare |
| Pithomyces++ | | | | | |
| Rust | | | | | |
| Scopulariopsis/Microascus | | | | Medium | |
| Stachybotrys/Memnoniella | Low | | | | |
| Unidentifiable Spores | | | | | |
| Zygomycetes | | | | | |
| Aspergillus | - | *High* | - | | - |
| Monodictye | | | | High | |
| Hyphal Fragment | - | - | - | Medium | - |
| Insect Fragment | | | Low | Low | |
| Pollen | | | | | |
| Fibrous Particulate | Rare | Low | Rare | Low | Rare |

Category: Count/per area analyzed - Rare: 1 to 10 Low: 11 to 100 Medium: 101 to 1000 High: >1000

- Denotes Not Detected.
++ Includes other spores with similar morphology; see EMSL's fungal glossary for each species category.
* = Sample contains fruiting structures and/or hyphae associated with the spores.

Regina Norman, Laboratory Manager
or other Approved Signatory

No discernable field blank was submitted with this group of samples.

LA Testing maintains liability limited to cost of analysis. Interpretation and use of test results are the responsibility of the client. This report relates only to the samples reported above and may not be reproduced, except in full, without written approval by LA Testing. LA Testing bears no responsibility for sample collection activities or analytical method limitations. The report reflects the samples as received. Results are generated from the bulk sampling data (sampling volumes and areas, locations, etc.) provided by the client on the Chain of Custody. Samples are within quality control criteria and met method specifications unless otherwise noted.
Samples analyzed by LA Testing South Pasadena, CA AIHA-LAP, LLC-EMLAP Accredited #102914

Initial report from: 11/23/2020 11:11 AM

For information on the fungi listed in this report, please visit the Resources section at www.emsl.com

Test Report DEVER1-2.9.0 Printed 11/23/2020 11:11 AM

Page.1 of 1

Limited Mold Survey
Controlled document by Paradise Environmental. All rights reserved.

OrderID: 322021267



## Microbiology Chain of Custody

**LA Testing Order Number** *(Lab Use Only):*

# 322021267

LA TESTING
520 MISSION STREET
SOUTH PASADENA, CA 91030
PHONE: (800) 303-0047
FAX: (323) 254-9982

| Company Name: Paradise Environmental | LA Testing–Bill to: ☑ Same ☐ Different |
| --- | --- |
| Street: 7344 Melrose St. | If Bill to is Different note instructions in Comments |
| | Third Party Billing requires written authorization from third party. |

| City: Buena Park | State/Province: CA | Zip/Postal Code: | Country: |
| --- | --- | --- | --- |

| Report To (Name): Timothy Nishio | Telephone #: | |
| --- | --- | --- |
| Email Address: paradiseenvironmental@gmail.com | Fax #: | Purchase Order: |

Project Name/Number: M112020 / Rupertus Dr.    Please Provide Results: ☐ Fax ☑ Email

U.S. State Samples Taken: CA    Project Zip Code: 94679    Connecticut Samples: ☐ Commercial ☑ Residential

Sterile, Sodium Thiosulfate Preserved Bottle Used: ☐ Biocide Used in Source (specify): ☐

Public Water Supply Samples: ☐ Note: All results may automatically be reported to DOH if required by state.

### Turnaround Time (TAT) Options - Please Check

| ☐ 3 Hour | ☐ 6 Hour | ☐ 24 Hour | ☐ 48 Hour | ☐ 72 Hour | ☐ 96 Hour | ☐ 1 Week | ☐ 2 Week |
| --- | --- | --- | --- | --- | --- | --- | --- |

### Microbiology Test Codes

| | | |
| --- | --- | --- |
| M001 Air-O-Cell | M174 MoldSnap | M012 *Pseudomonas aeruginosa* (P/A***) |
| M030 Micro 5 | M032 Allergenco-D | M024 *Pseudomonas aeruginosa* (MFT*) |
| M041 Fungal Direct Examination | | M016 Heterotrophic Plate Count |
| N169 Pollen ID & Enumeration | | M017 Total Coliform & *E. coli* (Colilert P/A***) |
| M280 Dust Characterization Level-1 | | M018 Total Coliform & *E. coli* (MFT*) |
| M281 Dust Characterization Level-2 | | M114 Total Coliform & *E. coli* Enumeration (Colilert MPN**) |
| M005 Viable Fungi- Air Samples (Genus ID & Count) | | M019 Fecal Coliform (MFT*) |
| M006 Viable Fungi- Air Samples (Includes *Penicillium, Aspergillus, Cladosporium, Stachybotrys* Species ID & Count) | | M020 Fecal Streptococcus (MFT*) |
| | | M028 *Enterococci* (MFT*) |
| M007 Culturable fungi - Surface Samples (Genus ID & Count) | | M129 *Enterococci* (Enterolert P/A***) |
| M008 Culturable fungi - Surface Samples (Includes *Penicillium, Aspergillus, Cladosporium, Stachybotrys* Species ID & Count) | | M160 Real Time qPCR-ERMI 36 Panel |
| | | M026 Sewage Screen –Water (MFT*) |

M115 Sewage Screen - Water (P/A***)
M116 Sewage Screen - Water (MPN**)
M117 Sewage Screen - Swab (P/A***)
M013 Sewage Screen - Swab (MFT*)
M133 *Methicillin*-resistant *Staph. aureus* (MRSA)
M031 Rapid-growing non-TB *Mycobacteria* Detection & Enumeration
M014 Endotoxin Analysis
M044 Group Allergen-(Cat, Dog, Cockroach, Dust Mite)
Other  See Analytical Price Guide
Legionella Analysis Please use LA Testing Legionella COC

*MFT= Membrane Filtration Technique
**MPN= Most Probable Number
***P/A= Presence/Absence

### Name of Sampler:

| Sample # | Sample Location/Description | Sample Type | Potable/NonPotable (Only for Waters) | | Test Code | Volume/Area | Date/Time Collected | Temperature (°C) (Lab Use Only) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Example A1 | Kitchen Sink/Tap | Water | ☒ P | ☐ NP | M017 | 100 mL | 9/1/13 4:00 PM | |
| M112020-1 | Exterior | Air | ☐ P | ☐ NP | M001 | 75L | 11/20 12p | |
| M112020-2 | Hall Bath | Air | ☐ P | ☐ NP | M001 | 75L | 11/20 12p | |
| M112020-3 | Hallway | Air | ☐ P | ☐ NP | M001 | 75L | 11/20 11AM | |
| M112020-4 | Bedroom-1 | Air | ☐ P | ☐ NP | M001 | 75L | 11/20 11p | |
| M112020-5 | Entry / Living Rm | Air | ☐ P | ☐ NP | M001 | 75L | 11/20 11:35 | |

Client Sample # (s):    Total # of Samples:    Samples Received Chilled? Yes / No (Lab Use Only)

| Relinquished (Client): | Date: | Time: |
| --- | --- | --- |
| Received (Lab): | Date: 11/20/20 | Time: 3:30pm |

Comments/Special Instructions:

Page 1 of ___

EMSL Analytical, Inc.'s (DBA: LA Testing) Laboratory Terms and Conditions are incorporated into this chain of custody by reference in their entirety. Submission of samples to LA Testing constitutes acceptance and acknowledgment of all terms and conditions by Customer.

Controlled Document – COC-33 Micro R6 12/01/2017

Page 1 Of    2

OrderID: 322021267



# Microbiology Chain of Custody

**LA Testing Order Number** (Lab Use Only):

#322021267

LA TESTING
520 MISSION STREET
SOUTH PASADENA, CA 91030
PHONE: (800) 303-0047
FAX: (323) 254-9982

*Additional pages of the chain of custody are only necessary if needed for additional sample information.*

| Sample # | Sample Location/Description | Sample Type | Potable/ NonPotable (Only for Waters) | Test Code | Volume/ Area | Date/Time Collected | Temperature (C) (Lab Use Only) |
|---|---|---|---|---|---|---|---|
| M112020-6 | Laundry Room | Air | ☐P ☐NP | M001 | 75 L | 11/20/20 | |
| M112020-7 | Living Room | Air | ☐P ☐NP | M001 | 75 L | 11/20/20 | |
| M112020-8 | Hallway | Lift Tape | ☐P ☐NP | M041 | | 11/20/20 | |
| M112020-9 | Master Bedroom Vanity | Lift Tape | ☐P ☐NP | M041 | | 11/20/20 | |
| M112020-10 | Laundry room | Lift Tape | ☐P ☐NP | M041 | | 11/20/20 | |
| M112020-11 | Kitchen Sink | Lift Tape | ☐P ☐NP | M041 | | 11/20/20 | |
| M112020-12 | Bedroom Furniture | Lift Tape | ☐P ☐NP | M041 | | 11/20/20 | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |
| | | | ☐P ☐NP | | | | |

**Comments/Special Instructions:**

Page 2 of 2

EMSL Analytical, Inc.'s (DBA: LA Testing) Laboratory Terms and Conditions are incorporated into this chain of custody by reference in their entirety.
Submission of samples to LA Testing constitutes acceptance and acknowledgment of all terms and conditions by Customer.

Controlled Document -- COC-33 Micro R6 12/01/2017



**LA Testing**

520 Mission Street South Pasadena, CA 91030
Tel/Fax: (323) 254-9960 / (323) 254-9982
http://www.LATesting.com / pasadenalab@latesting.com

EMSL Order:  322021267
Customer ID:  PARE25
Customer PO:
Project ID:

Attention: Paradise Environmental
Paradise Environmental
7344 Melrose St.
Buena Park, CA  90621

Phone: (714) 392-3766
Fax:
Collected Date: 11/20/2020
Received Date: 11/20/2020 03:30 PM
Analyzed Date: 11/23/2020

Project: M112020 Rupertus Dr.

### Test Report:Air-O-Cell(™) Analysis of Fungal Spores & Particulates by Optical Microscopy (Methods MICRO-SOP-201, ASTM D7391)

| Lab Sample Number: | 322021267-0001 | | | 322021267-0002 | | | 322021267-0003 | | |
| Client Sample ID: | M112020-1 | | | M112020-2 | | | M112020-3 | | |
| Volume (L): | 75 | | | 75 | | | 75 | | |
| Sample Location: | Exterior | | | Hall bath | | | Hallway | | |
| **Spore Types** | Raw Count | Count/M³ | % of Total | Raw Count | Count/M³ | % of Total | Raw Count | Count/M³ | % of Total |
|---|---|---|---|---|---|---|---|---|---|
| Alternaria (Ulocladium) | 6 | 300 | 2.7 | 2 | 80 | 0.5 | 2 | 80 | 0.7 |
| Ascospores | 7 | 300 | 2.7 | 3 | 100 | 0.7 | 5 | 200 | 1.8 |
| Aspergillus/Penicillium | 30 | 1300 | 11.7 | 303 | 12800 | 87 | 216 | 9120 | 80.3 |
| Basidiospores | 24 | 1000 | 9 | 8 | 300 | 2 | 6 | 300 | 2.6 |
| Bipolaris++ | 4 | 200 | 1.8 | - | - | - | - | - | - |
| Chaetomium | - | - | - | 2 | 80 | 0.5 | 6 | 300 | 2.6 |
| Cladosporium | 144 | 6080 | 54.8 | 29 | 1200 | 8.2 | 21 | 890 | 7.8 |
| Curvularia | - | - | - | - | - | - | - | - | - |
| Epicoccum | 2 | 80 | 0.7 | - | - | - | - | - | - |
| Fusarium | - | - | - | - | - | - | - | - | - |
| Ganoderma | - | - | - | - | - | - | - | - | - |
| Myxomycetes++ | 3 | 100 | 0.9 | 2 | 80 | 0.5 | 1* | 10* | 0.1 |
| Pithomyces++ | - | - | - | - | - | - | 1 | 40 | 0.4 |
| Rust | 1 | 40 | 0.4 | - | - | - | - | - | - |
| Scopulariopsis/Microascus | - | - | - | - | - | - | - | - | - |
| Stachybotrys/Memnoniella | - | - | - | 2 | 80 | 0.5 | 10 | 420 | 3.7 |
| Unidentifiable Spores | - | - | - | - | - | - | - | - | - |
| Zygomycetes | - | - | - | - | - | - | - | - | - |
| Nigrospora | 41 | 1700 | 15.3 | - | - | - | - | - | - |
| Torula-like | - | - | - | - | - | - | - | - | - |
| Triadelphia | - | - | - | - | - | - | - | - | - |
| Total Fungi | 262 | 11100 | 100 | 351 | 14720 | 100 | 268 | 11360 | 100 |
| Hyphal Fragment | 27 | 1100 | - | 31 | 1300 | - | 15 | 630 | - |
| Insect Fragment | 2 | 80 | - | - | - | - | 1 | 40 | - |
| Pollen | - | - | - | 2 | 80 | - | - | 40 | - |
| Analyt. Sensitivity 600x | - | 42 | - | - | 42 | - | - | 42 | - |
| Analyt. Sensitivity 300x | - | 13 | - | - | 13 | - | - | 13 | - |
| Skin Fragments (1-4) | - | 1 | - | - | 1 | - | - | 3 | - |
| Fibrous Particulate (1-4) | - | 1 | - | - | 1 | - | - | 1 | - |
| Background (1-5) | - | 3 | - | - | 4 | - | - | 3 | - |

++ Includes other spores with similar morphology; see EMSL's fungal glossary for each specific category.

No discernable field blank was submitted with this group of samples.

*Regina Norman*, Laboratory Manager
or other Approved Signatory

LA Testing maintains liability limited to cost of analysis. Interpretation and use of test results are the responsibility of the client. This report relates only to the samples reported above, and may not be reproduced, except in full, without written approval by LA Testing. LA Testing bears no responsibility for sample collection activities or analytical method limitations. The report reflects the samples as received. Results are generated from the field sampling data (sampling volumes and areas, locations, etc.) provided by the client on the Chain of Custody. Samples are within quality control criteria and met method specifications unless otherwise noted. High levels of background particulate can obscure spores and other particulates, leading to underestimation. Background levels of 5 indicate an overloading of background particulates, prohibiting accurate detection and quantification. Present = Spores detected on overloaded samples. Results are not blank corrected unless otherwise noted. The detection limit is equal to one fungal spore, structure, pollen, fiber particle or insect fragment. "*" Denotes particles found at 300X. "-" Denotes not detected. Due to method stopping rules, raw counts in excess of 100 are extrapolated based on the percentage analyzed.

Samples analyzed by LA Testing South Pasadena, CA AIHA-LAP, LLC—EMLAP Accredited #102814

Initial report from: 11/23/2020 11:11 AM

Tipton 6753
Page 107



## LA Testing

520 Mission Street South Pasadena, CA 91030
Tel/Fax: (323) 254-9960 / (323) 254-9982
http://www.LATesting.com / pasadenalab@latesting.com

| EMSL Order: | 322021267 |
|---|---|
| Customer ID: | PARE25 |
| Customer PO: | |
| Project ID: | |

**Attention:** Paradise Environmental
Paradise Environmental
7344 Melrose St.
Buena Park, CA 90621

**Phone:** (714) 392-3766
**Fax:**
**Collected Date:** 11/20/2020
**Received Date:** 11/20/2020 03:30 PM
**Analyzed Date:** 11/23/2020

**Project:** M112020 Rupertus Dr.

### Test Report: Air-O-Cell(™) Analysis of Fungal Spores & Particulates by Optical Microscopy (Methods MICRO-SOP-201, ASTM D7391)

| Lab Sample Number: | 322021267-0004 | | | 322021267-0005 | | | 322021267-0006 | | |
|---|---|---|---|---|---|---|---|---|---|
| Client Sample ID: | M112020-4 | | | M112020-5 | | | M112020-6 | | |
| Volume (L): | 75 | | | 75 | | | 75 | | |
| Sample Location: | Bedroom-1 | | | Entry/living Rm | | | Laundry room | | |
| **Spore Types** | Raw Count | Count/M³ | % of Total | Raw Count | Count/M³ | % of Total | Raw Count | Count/M³ | % of Total |
| Alternaria (Ulocladium) | 23 | 970 | 11.9 | 38 | 1600 | 24.2 | 2 | 80 | 3.6 |
| Ascospores | 3 | 100 | 1.2 | - | - | - | - | - | - |
| Aspergillus/Penicillium | 61 | 2600 | 32 | 75 | 3200 | 48.3 | 26 | 1100 | 49.1 |
| Basidiospores | 12 | 510 | 6.3 | 7 | 300 | 4.5 | 6 | 300 | 13.4 |
| Bipolaris++ | 2 | 80 | 1 | 1 | 40 | 0.6 | - | - | - |
| Chaetomium | 7 | 300 | 3.7 | 1 | 40 | 0.6 | 7 | 300 | 13.4 |
| Cladosporium | 74 | 3100 | 38.2 | 29 | 1200 | 18.1 | 10 | 420 | 18.8 |
| Curvularia | 1 | 40 | 0.5 | 1 | 40 | 0.6 | - | - | - |
| Epicoccum | - | - | - | 1 | 40 | 0.6 | - | - | - |
| Fusarium | - | - | - | - | - | - | - | - | - |
| Ganoderma | 1 | 40 | 0.5 | - | - | - | - | - | - |
| Myxomycetes++ | 8 | 300 | 3.7 | 2 | 80 | 1.2 | 1 | 40 | 1.8 |
| Pithomyces++ | - | - | - | - | - | - | - | - | - |
| Rust | - | - | - | 1 | 40 | 0.6 | - | - | - |
| Scopulariopsis/Microascus | - | - | - | - | - | - | - | - | - |
| Stachybotrys/Memnoniella | 1 | 40 | 0.5 | - | - | - | - | - | - |
| Unidentifiable Spores | - | - | - | - | - | - | - | - | - |
| Zygomycetes | - | - | - | - | - | - | - | - | - |
| Nigrospora | - | - | - | - | - | - | - | - | - |
| Torula-like | - | - | - | 1 | 40 | 0.6 | - | - | - |
| Triadelphia | 1 | 40 | 0.5 | - | - | - | - | - | - |
| **Total Fungi** | 194 | 8120 | 100 | 157 | 6620 | 100 | 52 | 2240 | 100 |
| Hyphal Fragment | 23 | 970 | - | 17 | 720 | - | 7 | 300 | - |
| Insect Fragment | 3 | 100 | - | 2 | 80 | - | 1 | 40 | - |
| Pollen | 3 | 100 | - | 4 | 200 | - | 2 | 80 | - |
| Analyt. Sensitivity 600x | - | 42 | - | - | 42 | - | - | 42 | - |
| Analyt. Sensitivity 300x | - | 13 | - | - | 13 | - | - | 13 | - |
| Skin Fragments (1-4) | - | 2 | - | - | 3 | - | - | 1 | - |
| Fibrous Particulate (1-4) | - | 1 | - | - | 1 | - | - | 1 | - |
| Background (1-5) | - | 2 | - | - | 3 | - | - | 4 | - |

++ Includes other spores with similar morphology; see EMSL's fungal glossary for each specific category.

*Regina Norman*

**Regina Norman, Laboratory Manager**
**or other Approved Signatory**

No discernable field blank was submitted with this group of samples.

LA Testing maintains liability limited to cost of analysis. Interpretation and use of test results are the responsibility of the client. This report relates only to the samples reported above, and may not be reproduced, except in full, without written approval by LA Testing. LA Testing bears no responsibility for sample collection activities or analytical method limitations. The report reflects the samples as received. Results are generated from the field sampling data (sampling volumes and areas, locations, etc.) provided by the client on the Chain of Custody. Samples are within quality control criteria and met method specifications unless otherwise noted. High levels of background particulate can obscure spores and other particulates, leading to underestimation. Background levels of 5 indicate an overloading of background particulates, prohibiting accurate detection and quantification. Present = Spores detected on overloaded samples. Results are not blank corrected unless otherwise noted. The detection limit is equal to one fungal spore, structure, pollen, fiber particle or insect fragment. "*" Denotes particles found at 300X. "-" Denotes not detected. Due to method stopping rules, raw counts in excess of 100 are extrapolated based on the percentage analyzed.

Samples analyzed by LA Testing South Pasadena, CA AIHA-LAP, LLC—EMLAP Accredited #102814

Initial report from: 11/23/2020 11:11 AM

For information on the fungi listed in this report, please visit the Resources section at www.emsl.com

MIC_M001_0002_0002  Printed: 11/23/2020 11:12 AM



## LA Testing

520 Mission Street South Pasadena, CA 91030
Tel/Fax: (323) 254-9960 / (323) 254-9982
http://www.LATesting.com / pasadenalab@latesting.com

| | |
|---|---|
| **EMSL Order:** | 322021267 |
| **Customer ID:** | PARE25 |
| **Customer PO:** | |
| **Project ID:** | |

| | | | |
|---|---|---|---|
| **Attention:** | Paradise Environmental | **Phone:** | (714) 392-3766 |
| | Paradise Environmental | **Fax:** | |
| | 7344 Melrose St. | **Collected Date:** | 11/20/2020 |
| | Buena Park, CA 90621 | **Received Date:** | 11/20/2020 03:30 PM |
| | | **Analyzed Date:** | 11/23/2020 |
| **Project:** | M112020 Rupertus Dr. | | |

**Test Report:Air-O-Cell(™) Analysis of Fungal Spores & Particulates by Optical Microscopy (Methods MICRO-SOP-201, ASTM D7391)**

| Lab Sample Number: | 322021267-0007 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Client Sample ID:** | M112020-7 | | | | | | | | |
| **Volume (L):** | 75 | | | | | | | | |
| **Sample Location:** | Living room | | | | | | | | |
| **Spore Types** | **Raw Count** | **Count/M³** | **% of Total** | | | | | | |
| Alternaria (Ulocladium) | 8 | 300 | 9 | | | | | | |
| Ascospores | 1 | 40 | 1.2 | | | | | | |
| Aspergillus/Penicillium | 18 | 760 | 22.8 | | | | | | |
| Basidiospores | 9 | 400 | 12 | | | | | | |
| Bipolaris++ | - | - | - | | | | | | |
| Chaetomium | 1 | 40 | 1.2 | | | | | | |
| Cladosporium | 39 | 1600 | 47.9 | | | | | | |
| Curvularia | - | - | - | | | | | | |
| Epicoccum | - | - | - | | | | | | |
| Fusarium | - | - | - | | | | | | |
| Ganoderma | - | - | - | | | | | | |
| Myxomycetes++ | 2 | 80 | 2.4 | | | | | | |
| Pithomyces++ | - | - | - | | | | | | |
| Rust | - | - | - | | | | | | |
| Scopulariopsis/Microascus | - | - | - | | | | | | |
| Stachybotrys/Memnoniella | 1 | 40 | 1.2 | | | | | | |
| Unidentifiable Spores | - | - | - | | | | | | |
| Zygomycetes | - | - | - | | | | | | |
| Nigrospora | 2 | 80 | 2.4 | | | | | | |
| Torula-like | - | - | - | | | | | | |
| Triadelphia | - | - | - | | | | | | |
| **Total Fungi** | 81 | 3340 | 100 | | | | | | |
| Hyphal Fragment | 28 | 1200 | | | | | | | |
| Insect Fragment | - | - | - | | | | | | |
| Pollen | - | - | - | | | | | | |
| Analyt. Sensitivity 600x | - | 42 | - | | | | | | |
| Analyt. Sensitivity 300x | - | 13 | - | | | | | | |
| Skin Fragments (1-4) | - | 2 | - | | | | | | |
| Fibrous Particulate (1-4) | - | - | - | | | | | | |
| Background (1-5) | - | 2 | - | | | | | | |

++ Includes other spores with similar morphology; see EMSL's fungal glossary for each specific category.

No discernable field blank was submitted with this group of samples.

*Regina Norman*, Laboratory Manager
or other Approved Signatory

LA Testing maintains liability limited to cost of analysis. Interpretation and use of test results are the responsibility of the client. This report relates only to the samples reported above, and may not be reproduced, except in full, without written approval by LA Testing. LA Testing bears no responsibility for sample collection activities or analytical method limitations. The report reflects the samples as received. Results are generated from the field sampling data (sampling volumes and areas, locations, etc.) provided by the client on the Chain of Custody. Samples are within quality control criteria and met method specifications unless otherwise noted. High levels of background particulate can obscure spores and other particulates, leading to underestimation. Background levels of 5 indicate an overloading of background particulates, prohibiting accurate detection and quantification. Present = Spores detected on overloaded samples. Results are not blank corrected unless otherwise noted. The detection limit is equal to one fungal spore, structure, pollen, fiber particle or insect fragment. "*" Denotes particles found at 300X. "-" Denotes not detected. Due to method counting rules, raw counts in excess of 100 are extrapolated based on the percentage analyzed.
Samples analyzed by LA Testing South Pasadena, CA AIHA-LAP, LLC–EMLAP Accredited #102814

Initial report from: 11/23/2020 11:11 AM

For information on the fungi listed in this report, please visit the Resources section at www.emsl.com



## LA Testing

520 Mission Street South Pasadena, CA 91030
Tel/Fax: (323) 254-9960 / (323) 254-9982
http://www.LATesting.com / pasadenalab@latesting.com

| | |
|---|---|
| EMSL Order: | 322021267 |
| Customer ID: | PARE25 |
| Customer PO: | |
| Project ID: | |

| | |
|---|---|
| Attention: | Paradise Environmental |
| | Paradise Environmental |
| | 7344 Melrose St. |
| | Buena Park, CA 90621 |

| | |
|---|---|
| Phone: | (714) 392-3766 |
| Fax: | |
| Collected Date: | 11/20/2020 |
| Received Date: | 11/20/2020 |
| Analyzed Date: | 11/23/2020 |

Project: M112020 Rupertus Dr.

### Test Report: Microscopic Examination of Fungal Spores, Fungal Structures, Hyphae, and Other Particulates from Tape Samples (EMSL Method MICRO-SOP-200)

| Lab Sample Number: Client Sample ID: Sample Location: | 322021267-0008 M112020-8 Hallway | 322021267-0009 M112020-9 Master bedroom vanity | 322021267-0010 M112020-10 Laundry room | 322021267-0011 M112020-11 Kitchen sink | 322021267-0012 M112020-12 Bedroom furniture |
|---|---|---|---|---|---|
| Spore Types | Category | Category | Category | Category | Category |
| Alternaria (Ulocladium) | - | - | - | - | - |
| Ascospores | | | | | |
| Aspergillus/Penicillium | High | - | High | Low | Rare |
| Basidiospores | | | | | Rare |
| Bipolaris++ | - | - | - | - | - |
| Chaetomium | *High* | Medium | *High* | | Rare |
| Cladosporium | - | - | - | Low | - |
| Curvularia | | | | | |
| Epicoccum | - | - | - | - | - |
| Fusarium | | | | | |
| Ganoderma | - | - | - | - | - |
| Myxomycetes++ | - | - | - | Low | Rare |
| Pithomyces++ | - | - | - | - | - |
| Rust | | | | | |
| Scopulariopsis/Microascus | - | - | - | Medium | - |
| Stachybotrys/Memnoniella | Low | | | | |
| Unidentifiable Spores | | | | | |
| Zygomycetes | | | | | |
| Aspergillus | | *High* | | | |
| Monodictys | | | | High | |
| Hyphal Fragment | | | | Medium | |
| Insect Fragment | | Low | Low | | |
| Pollen | | - | | | |
| Fibrous Particulate | Rare | Low | Rare | Low | Rare |

Category: Count/per area analyzed - Rare: 1 to 10 Low: 11 to 100 Medium: 101 to 1000 High: >1000

- Denotes Not Detected.
++ Includes other spores with similar morphology; see EMSL's fungal glossary for each specific category.
* = Sample contains fruiting structures and/or hyphae associated with the spores.

Regina Norman, Laboratory Manager
or other Approved Signatory

No discernable field blank was submitted with this group of samples.

LA Testing maintains liability limited to cost of analysis. Interpretation and use of test results are the responsibility of the client. This report relates only to the samples reported above and may not be reproduced, except in full, without written approval of LA Testing. LA Testing bears no responsibility for sample collection activities or analytical method limitations. The report reflects the samples as received. Results are generated from the field sampling data (sampling volumes and areas, locations, etc.) provided by the client on the Chain of Custody. Samples are within quality control criteria and met method specifications unless otherwise noted.
Samples analyzed by LA Testing South Pasadena, CA AIHA-LAP, LLC–EMLAP Accredited #102814

Initial report from: 11/23/2020 11:11 AM

For information on the fungi listed in this report, please visit the Resources section at www.emsl.com

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Christian B. Clark      SBN: 330380 <br> WEBB LAW GROUP APC <br> 10509 Vista Sorrento Pkwy, Suite 450, San Diego CA 92121 <br> TELEPHONE NO. 559-431-4888    FAX NO. *(Optional):* 559-821-4500 <br> E-MAIL ADDRESS: office@webblawgroup.com <br> ATTORNEY FOR *(Name):* Mande Tipton, et. al. | **ELECTRONICALLY FILED** <br> Superior Court of California, <br> County of San Diego <br><br> **12/15/2021** at 12:13:17 PM <br><br> Clerk of the Superior Court <br> By Regina Chanez,Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 1100 Union Street
MAILING ADDRESS: 1100 Union Street
CITY AND ZIP CODE: San Diego, 92101
BRANCH NAME: Central Courthouse

CASE NAME:
Mande Tipton, et. al. v. Camp Pendleton & Quantico Housing, LLC et. al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited    [ ] Limited <br> (Amount      (Amount <br> demanded     demanded is <br> exceeds $25,000)   $25,000 or less) | [ ] Counter   [ ] Joinder <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | 37-2021-00053251-CU-PO-CTL <br><br> JUDGE: <br> DEPT.:    Judge Carolyn Caietti |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [X] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more
      issues that will be time-consuming to resolve       courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence       court
      f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):* 12
5. This case [ ] is   [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: Dec. 15, 2021
Christian B. Clark
_____      ▶      _____
(TYPE OR PRINT NAME)           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courts.ca.gov |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET
CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) (if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability (not asbestos or
  toxic/environmental) (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) (not civil
  harassment) (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    (not medical or legal)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract (not unlawful detainer
    or wrongful eviction)
  Contract/Warranty Breach–Seller
    Plaintiff (not fraud or negligence)
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage (not provisionally
  complex) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (not eminent
    domain, landlord/tenant, or
    foreclosure)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  (arising from provisionally complex
  case type listed above) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment (non-
    domestic relations)
  Sister State Judgment
  Administrative Agency Award
    (not unpaid taxes)
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (not specified
  above) (42)
  Declaratory Relief Only
  Injunctive Relief Only (non-
    harassment)
  Mechanics Lien
  Other Commercial Complaint
    Case (non-tort/non-complex)
  Other Civil Complaint
    (non-tort/non-complex)
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition (not specified
  above) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7070 |

| PLAINTIFF(S) / PETITIONER(S): | Mande Tipton et.al. |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | Camp Pendleton & Quantico Housing LLC et.al. |
|---|---|

TIPTON VS CAMP PENDLETON & QUANTICO HOUSING LLC [IMAGED]

| **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)** | CASE NUMBER:<br>37-2021-00053251-CU-PO-CTL |
|---|---|

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge: Carolyn Caietti                                      Department: C-70

**COMPLAINT/PETITION FILED:** 12/15/2021

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 05/27/2022 | 10:15 am | C-70 | Carolyn Caietti |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

SDSC CIV-721 (Rev. 04-21)  **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)**  Page: 1

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases. Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing. E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court. All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program." This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain. The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150. Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**12/15/2021** at 12:13:17 PM
Clerk of the Superior Court
By Regina Chanez, Deputy Clerk

1

2 Lenden Webb, Esq. (236377)
Christian B. Clark, Esq. (330380)
3 **WEBB LAW GROUP, APC**
10509 Vista Sorrento Parkway, Suite 450,
4 San Diego, CA 92121
Telephone: (559) 431-4888
5 Facsimile: (559) 821-4500
6 Email: LWebb@WebbLawgroup.com
Email: CClark@WebbLawGroup.com
7

8 Attorneys for Plaintiffs

9 **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

10 **CIVIL UNLIMITED DIVISION**

11 MANDE TIPTON, an individual; CALEB C. ) Case No.: 37-2021-00053251-CU-PO-CTL
12 TIPTON, a minor, by and through their
guardian ad litem MICHAEL TIPTON; ) **NOTICE OF JURY FEE DEPOSIT**
13 LONDYN J. TIPTON, a minor, by and
14 through their guardian ad litem MICHAEL )
TIPTON; )
15 )
16                  Plaintiffs, )
17 v. )
                      )
18                  )
CAMP PENDLETON & QUANTICO )
19 HOUSING, LLC, a Delaware limited liability )
company; LPC PENDLETON QUANTICO )
20 PM LP, a Delaware limited partnership; )
21 LINCOLN MILITARY PROPERTY )
MANAGEMENT LP, a Delaware limited )
22 partnership; and DOES 1 THROUGH 50, )
23 inclusive; )
24 Defendants. )
                      )
25

26      TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

27 PLEASE TAKE NOTICE that, pursuant to Code of Civil Procedure § 631(b), Plaintiff

28 MANDE TIPTON, an individual; CALEB C. TIPTON, a minor, by and through their guardian

WEBB LAW GROUP, APC
10509 Vista Sorrento Parkway, Suite 450,
San Diego, CA 92121

ad litem MICHAEL TIPTON; LONDYN J. TIPTON, a minor, by and through their guardian ad litem MICHAEL TIPTON, hereby deposits the following fees for trial in the above captioned matter:

JURY FEES:  $150.00

Dated: December 15, 2021                              **WEBB LAW GROUP, APC**

                                              By_____
                                                   Christian B. Clark, Esq.
                                                   Attorney for Plaintiffs

NOTICE OF JURY FEE DEPOSIT
- 2 -



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2021-00053251-CU-PO-CTL        CASE TITLE: TIPTON vs CAMP PENDLETON & QUANTICO HOUSING LI

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
      (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
      (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), **_and_**
      (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
   • In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
   • In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO**<br><br>STREET ADDRESS:  330 West Broadway<br>MAILING ADDRESS:  330 West Broadway<br>CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827<br>BRANCH NAME:  Central | **FOR COURT USE ONLY** |

| |
|---|
| PLAINTIFF(S):  Mande Tipton et.al. |
| DEFENDANT(S): Camp Pendleton & Quantico Housing LLC et.al. |
| SHORT TITLE:  TIPTON VS CAMP PENDLETON & QUANTICO HOUSING LLC [IMAGED] |

| | |
|---|---|
| **STIPULATION TO USE ALTERNATIVE<br>DISPUTE RESOLUTION (ADR)** | CASE NUMBER:<br>37-2021-00053251-CU-PO-CTL |

Judge: Carolyn Caietti                                                Department: C-70

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐  Mediation (court-connected)                    ☐  Non-binding private arbitration

☐  Mediation (private)                                  ☐  Binding private arbitration

☐  Voluntary settlement conference (private)     ☐  Non-binding judicial arbitration (discovery until 15 days before trial)

☐  Neutral evaluation (private)                      ☐  Non-binding judicial arbitration (discovery until 30 days before trial)

☐  Other (*specify e.g., private mini-trial, private judge, etc.*): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____          Date: _____

_____          _____
Name of Plaintiff                                                Name of Defendant

_____          _____
Signature                                                          Signature

_____          _____
Name of Plaintiff's Attorney                                  Name of Defendant's Attorney

_____          _____
Signature                                                          Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  12/22/2021                                          _____
                                                                    JUDGE OF THE SUPERIOR COURT

| | | |
|---|---|---|
| SDSC CIV-359 (Rev 12-10) | **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION** | Page: 1 |